Pinn v. State.

---

LEWIS J. PINN v. STATE OF NEBRASKA.

FILED JANUARY 13, 1922.    No. 21927.

1. **Grand Juries.** District courts are empowered under the provisions of chapter 148, Laws 1917, and section 8143, Rev. St. 1913, to order the calling of a grand jury at any time during a term of court, whenever, in the judgment of the court or a judge thereof, the necessities of the public business require it.

2. **Statutes:** REENACTMENT. The provisions of section 8143, Rev. St. 1913, relating to grand juries, held in *Jones v. State,* 18 Neb. 401, to have been repealed by implication, were reenacted by the adoption of the revision of the codes and statutes by section 1, ch. 3, Laws 1913.

3. **Grand Juries:** PROCEDURE. The procedure outlined and desig-

nated in sections 8137-8139, Rev. St. 1913, has no application to the calling of a grand or petit jury after the commencement of the term at which such jurors are to serve.

4. **Perjury:** Evidence. Upon the trial of a defendant charged with the crime of perjury, the pleadings upon which the case was tried where the perjured testimony is charged to have been given are properly admissible in evidence, for the purpose of showing whether the alleged false testimony was material to the issues then being tried.

5 **Witnesses:** Impeachment. One of the modes recognized by law for impeaching the veracity of a witness is the introduction of persons as witnesses who testify that they are acquainted with the general reputation for truth and veracity of the person sought to be impeached in the neighborhood or community where he resides, and that such reputation is bad, and this rule applies where a defendant upon trial charged with the crime of perjury testifies as a witness upon such trial.

6. Instructions criticised, examined, and, when considered together, *held* to correctly state the law.

7. Evidence examined, and *held* to sustain the verdict.

ERROR to the district court for Kearney county: LEWIS H. BLACKLEDGE, JUDGE. *Affirmed.*

*W. D. Oldham* and *H. M. Sinclair,* for plaintiff in error.

*Clarence A. Davis, Attorney General, Jackson B. Chase* and *J. L. McPheely, contra.*

Heard before LETTON, DEAN and DAY, JJ., CORCORAN and GOSS, District Judges.

CORCORAN, District Judge.

The defendant was indicted by a grand jury called by order of the judge of the district court for Kearney county, and placed upon trial and convicted by a jury of the crime of perjury upon three counts of the indictment, and found not guilty as to one count. His motion for a new trial was overruled and he was sentenced to a term in the state penitentiary. He brings his case to this court for review upon a petition in error.

The record discloses that the defendant and a nephew,

Charles Wirth, both of whom were farmers in Kearney county, got into some difficulty over business transactions, resulting in a suit being brought by Wirth against the defendant Pinn to recover for certain work claimed to have been performed by Wirth for the defendant, his uncle, and for other items of account. The trial of this suit was concluded in the district court for that county on November 30, 1920, resulting in a verdict and judgment for the plaintiff. On the following day, December 1, 1920, the trial judge made an order directing the sheriff to "summon without delay sixteen good and lawful men from the body of the county of Kearney, having the qualifications of jurors, to appear on December 2, 1920, to serve as grand jurors." The grand jurors appeared as directed, were duly organized and proceeded to their work, and upon December 9, 1920, returned an indictment, indorsed "a true bill," charging the defendant Pinn with having committed perjury upon the trial of the civil case before mentioned on November 30, 1920. To this indictment a plea in abatement was made by the defendant on the ground that the grand jury was not selected as provided by statute from a list prepared by the county board; that the court was without authority in law to call the grand jury or to direct the sheriff to call the members thereof from the body of the county, and other objections presenting the same general questions. The reply of the state traversed the allegations of the plea and set up at length the different steps taken in ordering, selecting and impaneling the grand jury. This plea was tried to the court without a jury and was overruled, after which the defendant entered his plea of not guilty to the several counts and was placed upon his trial.

The question of the validity of the indictment found by this grand jury is the important and controlling question presented for decision by the petition in error. The determination of this question turns upon the power of the district court, under the present statutes, to make an order during a term of court, directing the calling of a

grand jury by the sheriff from the body of the county. The plaintiff in error contends that such power no longer exists. If this contention is correct, then it must follow that the calling of the grand jury in the present case was without authority of law, and the indictment returned by it was invalid, and the subsequent trial and conviction of the defendant was likewise without warrant or authority of law and cannot be permitted to stand. Regarding, as we do, the matter of supreme importance, not only to this defendant, whose liberty is at stake, but to the courts and profession in this state, we will again undertake to review this very important branch of the legislation of the state. Prior to 1885 all prosecutions in the courts of record in the state were upon indictments, presented by a grand jury. At the session of 1885 the legislature adopted a new method of prosecutions; that is, by means of an information filed by the prosecuting attorney, after a preliminary examination before a magistrate. From that date forward it was not necessary that a person charged with crime should first be presented by the indictment of a grand jury, as a prerequisite to being placed upon trial. The same session adopted section 584 of the Criminal Code, section 7, ch. 108, Laws 1885, providing:

"Grand juries shall not hereafter be drawn, summoned, or required to attend at the sittings of any court within this state, as provided by law, unless the judge thereof shall so direct by writing, under his hand, and filed with the clerk of said court."

This was the law of the state for 24 years. In 1909 the legislature again provided for the calling of grand juries by the adoption of chapter 171, Laws 1909, as follows:

"Unless otherwise ordered in writing by the court, or a judge thereof, a grand jury shall be drawn and summoned in the manner provided by law, on the first day of the first regular term of the district court of each county in the state."

This section was carried into the revision of 1913 (Rev. St. 1913, sec. 9031), with the addition of the words "in each year" in the body of the section. Under this section, which continued in force for eight years, if a grand jury was not desired, the trial judge was under the necessity of making an order to that effect in writing in advance of the terms of court named in the statute, in order to legalize prosecutions by information at such terms. This law stood until the session of 1917, when the legislature again turned their attention to the matter of grand juries, and by chapter 148, Laws 1917, section 9031 was again amended, and as the last word of the legislature upon the subject declared:

"The district courts are hereby vested with power to call grand juries. A grand jury may be called and summoned in the manner provided by law on such day of a regular term of the district court in each year in each county of the state as the district court may direct; and at such other times and upon such notice as the district court may deem necessary."

In addition to these several acts of the legislature attention is directed to section 8143, Rev. St. 1913. This general statute has been in force without amendment since Nebraska became a state. Its provisions are:

"Whenever the proper officers fail to summon a grand or petit jury, or when all the persons summoned as grand or petit jurors do not appear before the district courts, or whenever at any general or special term, or at any period of a term for any cause there is no panel of grand jurors or petit jurors, or the panel is not complete, said court may order the sheriff, deputy sheriff, or coroner to summon without delay good and lawful men, having the qualifications of jurors, and each person summoned shall forthwith appear before the court, and if competent, shall serve on the grand jury or petit jury, as the case may be, unless such person may be excused from serving or lawfully challenged."

It is contended that this statute, so far as it pertained

to grand juries, was repealed by implication by the ses-
sion of 1885, in the act before referred to.   In fact this
court is committed to that doctrine in *Jones v. State,*
18 Neb. 401, which decision has since been cited with ap-
proval in *State v. Lauer,* 41 Neb. 226, and *Ellis v. State*
81 Neb. 284.  Even though this be found to be the fact,
section 8143 was reenacted by the session of 1913, which
carried the old section just as it had stood for a half
century into the revision of the laws prepared by the
code commission authorized by the session of 1911, for
the revision of the codes and statutes of the state.   This
action of the legislature is set forth in section 1, ch. 3,
Laws 1913:

"That the code of laws embodying the general statutes,
the Code of Civil Procedure and the Code of Criminal
Procedure of the state of Nebraska, as prepared and re-
ported to the thirty-third general assembly of the legisla-
ture of Nebraska by A. M. Post, J. H. Broady, and E. L.
King, pursuant to the authority of chapter 166 of the
Laws of 1911, be, and the same is hereby adopted, ap-
proved and made of force as the Revised Statutes of the
state of Nebraska of 1913."

The provisions of section 8143 are self-executing.   It
is complete within itself, and reference to any other sec-
tion is not necessary to carry out its provisions.   The
authority to provide for prosecutions by indictment pre-
sented by a grand jury is amply furnished by section
9031, as adopted by the session of 1917.   It is idle to
insist that, when an emergency arises after the opening
of the term of court which, in the judgment of the court
or judge, requires the services of a grand jury, none can
be called because it is then impossible to have the mem-
bers selected by the county board and the names drawn
from a box by the sheriff and clerk ten days before the
opening of the term.   The law does not require the per-
formance of impossible acts.   The same exercise of com-
mon sense should be applied to the interpretation of the
laws as obtains in other important affairs of life.   The

people of the state are not impotent and powerless to execute their will, as expressed by the acts of the legislature. Through the legislature the people have spoken in 1909, 1913, and 1917. What the people in these several instances demanded was the restoration of prosecutions upon indictments presented by grand juries, and the power of their courts to provide the grand juries, when it appeared expedient or best calculated to serve the interests of the people and the state. It is not the province of this court to deny their demand.

The defendant cites *Jones v. State, supra,* and *Ellis v. State, supra,* as decisive of the question at issue. It must be remembered that *Jones v. State* was decided shortly after the act of 1885 was adopted, and that the decision in *Ellis v. State* was announced in 1908, before any of the acts before referred to were passed. The legislation adopted since 1908 has materially changed the situation, and the district courts now have the undoubted power and authority to order the calling of a grand jury at any time during a term of court. The procedure outlined in sections 8137-8139, Rev. St. 1913, providing for the selection of the names by the county board, reporting the list of names by the county clerk to the clerk of the court, and the drawing of the jury by the sheriff and the clerk, has and can have no application to either a grand or petit jury ordered during the term of court at which their services are required. As before stated, the law does not require the performance of that which is impossible. When a jury, either a grand jury or a petit jury, is needed, and none has been provided by the usual method, the way to procure a legal and proper jury is made clear by section 8143. This court has held in *Carrall v. State,* 53 Neb. 431, that the provisions of this statute are "broad enough to cover and include any and all possible reasons for which at any term of a court there may be no panel of jurors present."

The conclusion is irresistible from what has been said that the district courts of the state are clothed with

ample power and authority to order the calling of a grand jury during a term of court, whenever the necessity of the public business appears to require it. This authority is clearly conferred by chapter 148, Laws 1917, and section 8143 provides the proper procedure. It must follow as a logical conclusion that the plea in abatement was properly overruled in this case.

Counsel for defendant, in their very able and comprehensive brief, recite many alleged errors of the trial court in their effort to secure a reversal of the judgment. Among these is the admission in evidence of the original pleadings filed in the county court, from which the cause was appealed to the district court. As it appears without controversy in the record that the case was tried upon the same pleadings in both courts, no new pleadings being filed in the district court, this assignment is without merit. It was necessary for the prosecution to show the pleadings in the cause where the alleged perjury was committed, in order to establish that the evidence was material to the issues thus made.

Complaint is also made of the admission of the journal entry and judgment in the civil case. There might well be complaint made by the defendant of this action, if the offer had not been limited, as disclosed by the record. The offer was: "The state offers the journal entry and judgment for the purpose only of showing the ending of that trial and showing the date with relation to the time of the indictment, and not for the purpose of showing who judgment was rendered against or for whom judgment was rendered; only that the case was ended prior to the return of the indictment." To which the court added, presumably in the presence of the jury: "I am going to admit the journal entry and judgment not to show the judgment, but for the sole purpose of showing that the case has been terminated. The pleadings I have admitted may go to the jury, the judgment to that extent." Thus limited, the admission of this record could in no wise prejudice the defendant.

Complaint is also made that a number of witnesses were allowed to testify that the reputation of the defendant for truth and veracity in the community where he resided was bad. Reading the brief, the impression is at once created that this evidence was offered in support of the charge of perjury upon which the defendant was being tried. An examination of the record, however, discloses that the defendant took the stand in his own behalf and gave his testimony. Upon rebuttal the state produced these witnesses as discrediting the testimony given by him upon the present trial. This procedure was entirely proper. If the testimony given by the defendant upon this trial was to be believed by the jury, it would be their plain duty to acquit him. Or if it was sufficient to create a reasonable doubt in the mind of the jury of the truth of the charge made against the defendant, the duty of the jury would be the same. The state was clearly within its rights by offering evidence in rebuttal which might tend to discredit the testimony given by the defendant.

The assault made upon the third and seventh instructions given by the court is not warranted by the record. The third instruction is not one, as charged, intended to cover the whole case, but setting forth the material allegations of each count of the indictment which the state must prove beyond a reasonable doubt before it would be entitled to a conviction. Complaint is particularly made of the fourth subdivision or paragraph of that instruction which set out "that said testimony was material to an issue then and there being tried," etc. And in connection therewith that the jury were told in the seventh instruction that the testimony set forth was material as a matter of law. It is claimed that these instructions are contradictory and confusing. A careful reading of the instructions establishes the fact that this claim is without merit. In the first instance the jury were told what the state must prove to make out its case, and in the second the jury were properly advised that the evidence upon

which the alleged perjury was based was material. In neither instruction was any added burden placed upon the defendant. If either party had a cause for complaint it would be the state. But there exists no ground for complaint from either party. Each instruction occupied a proper place in the charge to the jury and correctly stated the law.

It is finally urged that the evidence does not sustain the verdict. It is particularly pointed out that upon the important question of whether Wirth was employed by the defendant, Wirth testified that the defendant made the contract of employment with him at the home of his mother, and that this being denied by the defendant, and there being no corroboration, in a prosecution for perjury there could be no conviction upon the testimony of a single witness. This would be important if sustained by the record. Counsel have overlooked the testimony of Caroline Wirth, the sister of the defendant, upon this point. True, she was not present at the alleged conversation at the side of the barn, but she testified that when her brother, the defendant, came into the house he talked with her about the same matter, and she testifies that her brother, the defendant, said to her: "He said that he would like to have Charlie work for him. I didn't want him to at first, but I said it wouldn't hurt the boy to earn a little money and that was the way it was done." This was corroborative of the story of young Wirth that his uncle came over to the home that day to employ him, and that after they had their talk by the side of the barn the defendant went into the house and talked to his mother.

It is manifest from a careful examination of this record that there was a sharp conflict in the evidence. Upon some phases of the case the defense produced a greater number of witnesses than the prosecution. The quantum of proof, however, is not determined by counting the witnesses. There was ample evidence, if believed by the jury, to establish beyond a reasonable doubt that the

defendant had given false testimony upon the trial of the civil case in question. This was all that was necessary to satisfy the requirements of the law. It must be a matter of sincere regret to all concerned that this prosecution arose out of a chain of incidents revealing a serious family disagreement. This defendant and his sister, Mrs. Wirth, are each of mature years and appear to have developed a feeling for each other that is not at all commendable. The two principal witnesses for the prosecution were the nephew and his mother, the sister of the defendant. As their evidence appears in the record, little effort was made to conceal the bitterness which existed between the parties. There is danger in such instances that testimony will be colored to the disadvantage of the defendant. All of these facts, however, must have been plain and obvious to the jury. They were not only the best judges, but the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each and all of them. This being so, if the case was properly submitted to the jury, the court should not disturb the verdict. The record shows that the case was well tried and properly submitted. It is unfortunate that it should become necessary to punish a citizen of the state for an offense of this character. A jury selected from the representative citizenship of the county where Lewis J. Pinn has resided for years has found and declared him guilty of this dangerous crime to civil society.

There appears to be no error of a substantial nature in the record, and the judgment must be, and is,

AFFIRMED.