ROBERT LEE, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

23 N. W. 2d 316

Filed June 7, 1946.  No. 32007.

334

*Lloyd E. Peterson* and *Betty Jean Peterson*, for plaintiff in error.

*Walter R. Johnson, Attorney General, Carl H. Peterson*, and *H. Emerson Kokjer*, for defendant in error.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

Defendant was charged with murder in the second degree causing the death of one James F. Sweany. He was found guilty of manslaughter. He brings the cause here by petition in error. We reverse and remand.

Defendant presents seven assignments of error. These we shall discuss in the order in which they arose at the trial.

Defendant charges that the trial court erred in giving oral instructions on the law during the examination of a prospective juror. The record discloses that during the examination of a juror by the state, he replied: "I won't convict a man on circumstantial evidence." The state challenged the juror for cause. Defendant resisted the challenge and stated the court would instruct as to the burden of proof on the state to prove its case beyond a reasonable doubt, and asked the juror if he would be bound by such an instruction. He replied: "He is innocent until he is proven guilty." The court then said: "Evidence is direct and circumstantial. Sometimes the only kind of evidence that is introduced in a case is circumstantial. In those cases the Court gives a special instruction about circumstantial evidence, which, of course, it is your duty to follow. In this case, if all the evidence should turn out to be circumstantial, and I should give that instruction as to circumstantial evidence, would you follow that instruction?" The juror replied: "I wouldn't say whether I would or not." The

court excused the juror.

Obviously, this is not an instruction to the jury and not within the provisions of section 25-1111, R. S. 1943. Section 29-2007, R. S. 1943, requires that all challenges for cause shall be tried by the court. The trial court was confronted with a prospective juror who was opposed to conviction on circumstantial evidence. The trial court told him that evidence was direct and circumstantial. That he already knew. The trial court told him that sometimes the only evidence was circumstantial and if so the court would give an instruction on it, and asked the juror if he would follow it. We think the statement made and question asked were proper. It was not prejudicial error. Brooks v. State, 107 Tex. Cr. 546, 298 S. W. 422; People v. Lazarus, 207 Cal. 507, 279 P. 145.

On the night of June 18, 1944, members of three families and others, some ten or more in all, including deceased and defendant, met at a concrete-floored shelter house in a park in Nebraska City. They had with them bottled beer, pop, and two musicians. Sometime during the party a fight started between two women of the party. Then a third woman and the deceased entered the fight, the order of entry being in dispute. The defendant then entered the fight to assist the third woman, who was being roughly handled by deceased. Before the fight ended, deceased was lying either dead or dying on the floor. The state's evidence was to the effect that defendant hit deceased on the head with a partly filled quart beer bottle. This evidence was given by Dallas and Hubert Adkins, boys 17 and 14 years old respectively. The state's contention was that this blow caused the death. Defendant's evidence was to the effect that deceased had a decompensated heart and died of heart failure.

The state offered the testimony of Dallas Adkins, the son of one of the first two women engaged in the fight. The deceased had lived in the Adkins home for eight or nine years. With reference to the deceased, the witness was asked on cross-examination: "Did you ever see him have

any difficulty with his heart trouble at your home?" He answered: "No, because he had a good heart. That is what the doctors told him." Defendant moved to strike the last part as not responsive. The motion was overruled. Clearly the answer after "No" was not responsive and it was error not to strike it. The statement of the witness was an opinion and hearsay. He was permitted to tell the jury that the deceased had a good heart and that the doctors had so told deceased. That went directly to contradict the theory of the defense. We said in Swogger v. State, 116 Neb. 563, 218 N. W. 416: "All testimony received over objection will be presumed to have been considered by the jury as material in arriving at their verdict." Clearly the testimony of this boy should not have been received either as to the condition of deceased's heart, or as to what the doctors had told deceased. We consider the error to be prejudicial.

The evidence is in dispute as to when the fight started. It lasted several minutes. One witness puts it as early as 11:30 p. m. Most of the witnesses put it around 1:00 to 1:30 a. m. In any event, by 2:00 a. m. some of the parties had gone to the police station and reported the event. At 3:00 a. m., photographs were taken of the scene. These pictures were offered and admitted in evidence over objection. The pictures all show the deceased lying on his back on the floor, his arms outstretched, his left foot drawn up under his right leg. They show a cloth pad under the head of the deceased. All three of them show broken glass on the floor. All three of them show a large black blotch on the floor below and near deceased's right hand. They show a smaller blotch about a forearm's length above the elbow of the right arm and the same approximate distance from deceased's head. They show a club, approximately an arm's length, lying at the outer edge of the large blotch. One of the pictures shows the undertaker's cart lying against a railing. The pictures were offered several times before being admitted. The state's witnesses had testified that the body was and was not in the position in which it

fell. Before admission, the evidence showed that the cloth under the head was a shirt of one of the witnesses placed there after the fall; the undertaker's cart, of course, was placed there later. There is no contention that the club was in any wise connected with the death. When admitted, the two blotches were not explained, but afterward were explained by the state's witnesses to be spilled beer as to the larger one, and blood as to the smaller one. There is no evidence that the blood came from the deceased. If from the deceased, it is obvious that the body had been moved. We are of the opinion that when the pictures were admitted in evidence, a sufficient foundation had not been laid.

Three things stand out prominently in the pictures: The large black blotch, the club, and the prone body of the deceased. The first impression of the pictures comes from them. There is state's evidence that a bottle of beer was broken and spilled on the floor before the fight, and also that the bottle of beer used by defendant broke when it hit the floor and spilled. We find no evidence as to which was the source of the beer blotch and glass. There is evidence that a part of a broken bottle was near the deceased when the officers reached him. It does not appear in the pictures —only splintered pieces of glass show. The club had no part in the cause of death, yet it stands out prominently in the pictures. The deceased is shown lying on the floor, yet nothing in the pictures shows he was dead. The wound on the back of his head does not appear in any of the pictures.

In Bassinger v. State, 142 Neb. 93, 5 N. W. 2d 222, we said with reference to the introduction of pictures that " * * * when such evidence had no tendency to establish the guilt or innocence of the accused and is effective only to inflame the passions of the jury, it should not be received; when, however, evidence of this character tends to throw light upon or illustrate any controverted issue, then it is admissible." Also, in MacAvoy v. State, 144 Neb. 827, 15 N. W. 2d 45, we said: "Where a photograph illustrates or makes clear some controverted issue in the case, a proper foundation having otherwise been laid for its reception in

evidence, it may properly be received, even though it may present a gruesome spectacle." As we see these pictures, they neither illustrate nor throw light upon any controverted issue in the case. We have grave doubts if impressions made by the pictures could be removed by the evidence explaining them as not connected with the cause of death. If effective for any purpose, the result could be to prejudice the jury. We are of the opinion that the admission of the pictures was error and prejudicial.

Defendant assigns as error the refusal of the trial court to admit evidence which he contends goes to the truth and veracity of the witness, Hubert Adkins. This witness was the 14-year-old son of the woman at whose home deceased had been living. He offered copies of three letters written by school officials, two to the mother and her son setting out the failure of the witness to attend school and advising that complaints would be filed under the compulsory education law, and one to the county attorney reciting the facts and suggesting a complaint. Defendant further complains that a school nurse was not permitted to testify how many times she had been called upon to investigate the truancy of the witness. On cross-examination this witness had testified that while attending school he had been picked up by the truant officer "Quite a few times" and was no longer attending school. We see no prejudicial error in the rejection of this evidence.

The school nurse further was asked if she had had "an opportunity to observe the truth and veracity" of the witness. She was not permitted to answer. Defendant then offered to prove that the witness would testify "based solely upon her personal relations and investigations of said Hubert Adkins, that * * * his reputation for truth and veracity is bad." The test is not what one person may think of the truth and veracity of the witness sought to be impeached, but what is the general reputation for truth and veracity of the person sought to be impeached in the neighborhood or community where he resides. Matthewson v. Burr, 6 Neb. 312; Taylor v. Ryan, 15 Neb. 573, 19 N. W. 475;

Girch v. State, 104 Neb. 503, 177 N. W. 798; Pinn v. State, 107 Neb. 417, 186 N. W. 544. The trial court did not err in excluding the offered testimony.

The defendant requested the trial court to instruct the jury that if it found the testimony of a witness to be false, it was entitled to consider that all of such witness' testimony was false. The trial court refused to give the instruction and did not on its own motion give an instruction on that theory. Defendant assigns this as error. This assignment goes to the testimony of the witness, Dallas Adkins. He had testified at the preliminary hearing. He admitted on the witness stand that his testimony at the preliminary hearing was different from that at the trial as to time and events preceding the fight. He testified that some of his testimony at the preliminary hearing was false. A more serious situation arises as a result of the testimony at the trial. As a state's witness, he testified on direct examination that defendant hit deceased with the beer bottle "Right at the base of the skull," and that after deceased fell down "I put my hand underneath his head and my fingers went in the hole in his head." He repeated this testimony on cross-examination and further that he could not tell how big the hole was, and that he just got one finger into the hole. He did not know how far in, but that "My finger went in." He further testified that "the skull was crushed," and that he felt "Some soft stuff" in the broken part of the skull; and that he "didn't notice any blood."

The state offered a medical witness who examined the body of the deceased on the floor, and later performed an autopsy. This doctor testified on direct examination that he found dried and clotted blood immediately under the head of deceased; that he had "a scalp laceration on the back of the head about an inch in diameter"; that the laceration "had not perforated clear through to the skull"; that in his opinion the wound was made by some sharp instrument; that there was no blood surrounding the brain; that the brain was perfectly normal on the outside and there were no areas of hemorrhage or lacerations on the

inside of the brain. On cross-examination he testified that it was a "clean cut" about an inch in diameter, semi-circular in shape and made by something sharp, and that the tough membrane over the skull was not penetrated. He answered yes to a question involving "a superficial cut"; and stated that there was no hole in the skull that a finger could be run into; and that there was no crushing of the skull and no perforation of the skull. The state rested its case upon the conclusion of this witness that the deceased died from concussion caused by a blow on the head. It likewise rests its case upon the testimony of Dallas Adkins and his younger brother, Hubert Adkins, that deceased was struck on the head by a beer bottle in the hand of the defendant.

The probative value of the younger brother's testimony was weakened by his testimony on direct examination that defendant "Hit him, I guess." The nature and extent of the wound on the back of deceased's head and whether or not the skull was crushed were material facts. Obviously, one of these witnesses described it falsely. Obviously likewise, each witness testified to other facts material to the state's case. Should an instruction have been given based on the maxim of false in one thing, false in everything?

In Markiewicz v. State, 109 Neb. 514, 191 N. W. 648, we stated the rule as follows: "Where the condition of the testimony is such as to justify and require the giving of an instruction, based upon the maxim *Falsus in uno, falsus in omnibus,*' the court should give it. Such an instruction is, however, not required in all cases, but only where, from the evidence, the jury may be justified in believing that a witness has wilfully and corruptly testified to a falsehood, and, further, where the same witness has testified as to some other material issue in the case than that upon which he is directly impeached." In Joseph v. State, 128 Neb. 824, 260 N. W. 803, we held an instruction to the jury that " 'If you believe from the evidence that any witness who testified in this case has wilfully testified falsely to any material fact in said case, then you are at liberty to entirely

disregard all of the testimony of any such witness' " to be a proper and correct statement of the law. We think Markiewicz v. State should be clarified in this particular—that such an instruction is, however, not required in all cases but only where from the evidence the jury may be justified in believing that a witness has willfully testified falsely to any material fact in the case, and further where the same witness has testified as to some other material issue in the case than that upon which he is directly impeached. The instruction requested by the defendant was faulty in that it did not include the elements that the witness willfully testified falsely to any material fact in the case. The trial court instructed generally on credibility and conflict of testimony. The defendant does not question the instruction given. Had the defendant desired the more specific instruction as to credibility, he should have made a request containing a correct statement of the rule. Had he so requested, the instruction should have been given. Under the circumstances here it was not error for the trial court to refuse the requested instruction, and it was not prejudicial error for the trial court to fail to instruct on the maxim. Denney v. Stout, 59 Neb. 731, 82 N. W. 18; Martin v. State, 67 Neb. 36, 93 N. W. 161; Koch v. State, 130 Neb. 119, 264 N. W. 172.

The state's medical witness testified that in his opinion deceased "died of concussion. The concussion caused a temporary paralysis of the brain cells, and paralysis, of course, of the respiratory system." He further testified that he did not believe the wound on the head would have been caused by a fall back on to a concrete floor. He further testified that a post-mortem examination of the organs in the chest did not reveal anything which would change his opinion as to the cause of death. On cross-examination he testified deceased weighed between 250 and 300 pounds, and that, assuming the deceased fell over and struck his head on the floor, that could cause a concussion of the brain, and that "a concussion could have been caused by a blow on the head or could have been caused by striking the concrete

floor." He further testified that by a sharp instrument he meant one like "maybe a piece of glass or a knife"; and that " * * * the abrasion on the scalp was of such a nature it didn't appear to be one where he had fallen on the back of his head. If they fall and slide a little bit, a lot of times they will cut the scalp, but it is usually a little bit ragged and not a clean cut" and "I wouldn't say any club had been used." Later the witness was called back for further examination and in answer to a hypothetical question answered that the deceased died of "concussion of the brain" caused by "The blow to the head." On cross-examination he testified that in his opinion the wound was not caused by a fall to the concrete floor. On recross-examination he was asked: "Assuming the further fact that there was a lot of broken glass over this floor, including glass broken from beer bottles, and if the man had fallen to the floor, the cut could have been caused by a sharp piece of glass, is that not right?" and answered: "It could, yes, although if there had been some jagged pieces, you would think a man with that weight, falling, it would probably perforate further through the scalp and into the skull." He followed this with answers that there were exceptions and that it was clearly speculative.

Defendant offered the testimony of a doctor that he had treated deceased professionally over a period of years; that he had observed him during the last year of his lifetime; that he had treated deceased for an ailment of the heart; that deceased could not get his breath and had a decompensated heart; that his heart was subject to "acute dilation" meaning decompensation to the point where it dilates and never contracts and stays in that position. On cross-examination he testified it was possible for a person with a decompensated heart to suffer a blow on the head which might cause concussion and death. He further testified on direct examination that clots in the arteries or veins or stoppage in the arteries or veins was not necessary to cause death; that deceased did not have a coronary, but a mild, carditis; that the heart did not put out sufficient blood; that

exertion increases the load on the heart. In answer to a hypothetical question he testified that death could have been caused by over-exertion. Defendant denied striking deceased with a bottle.

Defendant appeals to the rule that " * * * if the evidence or any material part thereof is fairly susceptible of two constructions, one in favor of the state, and the other in favor of the defendant, the doubt must be resolved in behalf of the innocence of the accused, as every intendment or inference under the evidence, considered in its entirety, must be construed in his favor." Bourne v. State, 116 Neb. 141, 216 N. W. 173. Defendant asserts it was the duty of the trial court so to instruct the jury and assigns as error the failure of the trial court so to instruct on his own motion.

The state was required to prove not only that defendant struck the deceased with the beer bottle, but also that the blow was the cause of death. Whether or not the defendant struck the deceased with a beer bottle is a question of fact for the jury to determine. Either he did or he did not. There is no question there as to two constructions of the evidence, but rather which witnesses and which evidence the jury was to believe. The next question is, what caused the death? It appears that the state's witness has ruled out the wound as a cause of death. If not out, then it was again a question of which evidence the jury was to believe. There is no dispute as to what the autopsy disclosed. From that point on the question is the weight and credibility to be given by the jury to the opinions of the expert witnesses as to what caused the fall and what caused the death. That constitutes a conflict in evidence also as distinguished from a construction to be put on evidence. The rule invoked by the defendant is not applicable here. The assignment of error accordingly is without merit.

The defendant went to trial upon an information charging murder in the second degree. Before resting its case, the state moved to take from the jury the charge of second degree murder and to reduce the charge to manslaughter, and requested that the court so instruct the jury. The de-

fendant resisted the motion. The court stated: "I will sustain the County Attorney's motion." The journal shows that the court sustained the motion. In his instructions to the jury the court stated that the information charged murder in the second degree, setting out the charge; that that charge was withdrawn; that the withdrawal of that charge did not terminate the case; that the charge of murder in the second degree, under the evidence in the case, included the lesser crime of manslaughter as defined later in the instructions, and submitted the manslaughter issue. The defendant assigns this as error, charging that it emphasized the charge of murder and was a "subtle means" of advising the jury that the state thought the defendant guilty of murder in the second degree, and afforded a "compromise means" for the jury to convict of manslaughter. We see no merit in this assignment. The jury had been told that the charge was murder in the second degree. The court explained to them that that charge was not being submitted, but that the issue was the lesser crime of manslaughter. The instruction was proper. "Where the prosecution elects, or has been required to elect, between several distinct crimes or counts, the jury should be so instructed." 16 C. J., Criminal Law, § 2363, p. 969; 23 C. J. S., Criminal Law, § 1195, p. 744. See Gould v. State, 71 Neb. 651, 99 N. W. 541.

For the reasons given herein the judgment of the trial court is reversed and the cause remanded.

REVERSED.