STATE OF NEBRASKA, APPELLEE, v. FLOYD CRAIG, APPELLANT.

220 N. W. 2d 241

Filed July 18, 1974. No. 39384.

348

John R. O'Hanlon, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

Defendant was convicted by a jury on separate counts of having stolen and having willfully and maliciously killed one cow and was sentenced to a term in the Nebraska Penal and Correctional Complex. On appeal the issues are: (1) Denial of a motion for mistrial made because of the admission, over objection, of rebuttal testimony by the sheriff as follows: "Mr. Craig's reputation is that he would take anything he could get a hold of." (2) Refusal to admit into evidence in support of a motion for new trial on the ground of newly discovered evidence, a writing by a third party confessing guilt of the crime of which the defendant was convicted, which confession tended to exculpate the defendant. (3) Denial of a motion for continuance of hearing on the motion for new trial so that the testimony of the confessing third party could be adduced. (4) Sufficiency of the evidence to support the conviction.

With reference to the first issue, the State argues that the error was cured by the striking of the testimony and an admonition to the jury to disregard it. With

reference to issue (2), the State relies upon prior decisions of this court to the effect that declarations against penal interest are not exceptions to the hearsay rule and therefore inadmissible. The State does not respond to issue (3).

In order to determine whether the admission of the sheriff's testimony was prejudicial, it is necessary to summarize the evidence. This summary will also dispose of, adversely to the contentions of the defendant, the fourth issue.

Since we find that a new trial is required because of the erroneous admission of the testimony of the sheriff, it is not necessary to determine issue (2) because, inasmuch as a new trial is necessary, the defendant will be afforded a reasonable opportunity to produce the direct testimony of the confessing third party at trial. We therefore need not determine at this time whether the existing rules on admissibility of declarations against penal interest should be modified to conform to the more modern and seemingly more rational holdings. See, Rule 804(b) (4) and Comment, Proposed Nebraska Rules of Evidence, August 1, 1973; People v. Brown, 26 N. Y. 2d 88, 257 N. E. 2d 16 (1970); Chambers v. Mississippi, 410 U. S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Since such exculpatory third party confessions, if true, bear directly upon the guilt or innocence of the defendant, their admission or rejection is more than just a technical nicety. Due process may require the admission of testimony corroborating a third party confession which was subsequently retracted. Chambers v. Mississippi, *supra*. On the other hand, the possibility of the fabrication of either the confession or its contents, perhaps by a confederate who has nothing to lose, would seem to require care in the admission of such evidence where the declarant (the confessing third party) himself is not available to testify.

The defendant was apprehended at about 11 o'clock p.m. on the day in question by a sheriff's patrol in a

pasture where the apparently freshly killed and partially gutted cow was found. The sheriff's deputies testified that they came upon a pickup truck parked along the road with lights off and the engine not running. They stopped to investigate. They heard a sound and directed a flashlight in the direction from which it came. A man was lying (according to the defendant, crouching) near the carcass a very short distance from the road. The defendant ran. The officer recognized him and yelled, " 'Floyd, stop or I'll shoot.' " The defendant stopped.

The explanation of the defendant, who was self-employed as a car body repairman, was that while driving along the road to pick up a disabled car for a friend, Steve Mundorf, he saw a fellow jump up in the pasture and run. He stopped his pickup, turned off the lights and motor, and went to investigate. He saw the animal. He squatted down. At the time the sheriff's patrol came along and when the light struck him, he ran, but stopped when he recognized the voice of the deputy. At the scene he denied he had killed the animal.

The evidence showed that the cow had been killed by a .22 caliber bullet in the head and that a knife had been used to open the animal and also to make a throat cut. A search of the area by the sheriff's department disclosed neither a knife nor a gun and none was found on the defendant. A double-bladed axe and a flashlight, the latter item, unlighted but focused on the open portion of the carcass, were found at the scene. The defendant denied ownership of these items and asked that the officers check them for fingerprints. This was not done because it would have been "unproductive" as the deputies had handled the items after the seizure. The defendant asked to take a polygraph test, but this was not done.

The defendant's version of how he came to be at the site was corroborated to some extent. The road in question is regularly patrolled. The lights of an

approaching car can be seen for over a half mile. There would be time for someone to escape or move from the immediate area before a car arrived. After the defendant was placed in the patrol car one of the deputies heard voices which he judged to be about 100 yards away.

Mundorf, the defendant's friend, corroborated the defendant's story that the defendant was to pick up his stalled car. He stated that he and one Mike Martin had left the defendant's body shop in another car at about 10:45 p.m. at which time the defendant also left. The defendant was to meet them with his pickup and tow the car. The defendant was to follow them, but they lost sight of him when he stopped at a gas station. Mundorf and Martin drove directly to the disabled vehicle and arrived there about 11 p.m. Martin corroborated Mundorf's story. They stated that they found they could fix the auto and upon doing so drove it away when defendant did not show up. That these parties and the defendant left the body shop at about 10:45 p.m. was corroborated by yet another witness. Defendant's statement that he stopped at the filling station at about 10:45 p.m. was corroborated by two other witnesses.

The defendant offered and there was received into evidence trousers which he stated he had worn on the evening in question. They had been examined and tested by a laboratory. It was determined that red substance on the trousers was paint and not blood. At the preliminary hearing, although not at trial, deputy sheriffs had testified that defendant had blood on his trousers and person. At trial this testimony was that he had blood on his hands. The defendant's clothing was not taken from him for testing after his arrest.

The defendant had considerable experience in a packing plant and so had some knowledge of aspects of the slaughtering process. The throat cut on the cow in question resulted in very little bleeding. The defendant

introduced evidence by a veterinarian to the effect that if the jugular vein of the cow had been cut, "there could be a great deal of bleeding."

An unopened box containing a roll of polyethylene was found in the pickup at the time of the defendant's arrest. The apparent purpose of offering this evidence was to show that it might be used to lay the meat on. Defendant testified that it was for use in his body shop to cover auto bodies to protect them from grime and paint spray. Another auto body repairman verified that polyethylene was sometimes used for that purpose.

It is apparent that a successful defense by Craig depended upon the jury's acceptance of his credibility. He had been twice convicted of felonies and this, of course, was before the jury although the details and the nature of the charges were not. The defendant offered and there was received testimony by several witnesses attesting to his good reputation for truth and veracity. The State sought to rebut this testimony by contradictory testimony from the sheriff.

The sheriff testified as follows: "Q. Do you know if Floyd Craig has a reputation for truth and veracity in the community from your conversations or knowledge of him in this community? A. I know he has a reputation. Q. Do you know if he has a reputation for truth and veracity? A. No. Q. You do not know if he has a reputation, or you do know and did I misunderstand your answer? A. Well, I don't know as I have ever heard anybody say he was—I don't know exactly how to say—What was your question? . . . THE COURT: We are having difficulty with this question. I don't know if you understand the question. The whole question is: Do you know whether the defendant has a reputation with respect to truth and veracity in the community, and that's either yes or no. THE WITNESS: No. . . . Q. You don't know if he has a reputation? A. I answered that once. I know he has got a reputation." Objection was made and overruled. The testi-

mony then continued: "THE WITNESS: Mr. Craig's reputation is that he would take any thing he could get a hold of." At this point a motion to strike was sustained. The court then stated: "And the jury is instructed now, and will be given specific instructions that anything that has been stricken from the record in this case is not to be considered by the jury." As a consequence of further questioning an unfavorable opinion on the reputation of the defendant for truth and veracity was elicited. Cross-examination developed that this was the sheriff's own opinion and not founded upon his knowledge of the reputation of the defendant in the community.

This and most courts have long refused to permit testimony of a witness' general character on the issue of his credibility and have consistently held that only evidence of his reputation for truth and veracity is admissible on the point. Courts further do not permit evidence of specific instances of either truth-telling or of lying. One of the reasons for this is an avoidance of collateral issues. The accused, if he chooses to testify, is, of course, subject to the same rules of impeachment as other witnesses.

The defendant was entitled to offer evidence of his reputation for truth and veracity and he did. The prosecution was entitled to dispute that evidence, but only by contradictory evidence of his bad reputation for truth and veracity. Myers v. State, 51 Neb. 517, 71 N. W. 33; Wells v. State, 152 Neb. 668, 42 N. W. 2d 363. The impeaching witness is not entitled to give his own opinion of the defendant's truth and veracity. Lee v. State, 147 Neb. 333, 23 N. W. 2d 316. A witness who has testified to the general reputation of another for truth and veracity may, however, be cross-examined for the purpose of eliciting the sources of his information. State v. Newte, 188 Neb. 412, 197 N. W. 2d 403. Although a defendant may be questioned as to his convictions for a felony, if he admits the fact and the

correct number of convictions, no information as to the nature of the charges or other details may be elicited or received. Latham v. State, 152 Neb. 113, 40 N. W. 2d 522. Evidence of facts which constitute a crime are not admissible for impeachment purposes. Vanderpool v. State, 115 Neb. 94, 211 N. W. 605. It is the rule in practically all jurisdictions that the character witness may be interrogated only as to truth and veracity. McCormick on Evidence, § 44, p. 95.

As shown by the summary of the testimony, the sheriff had twice answered that he did not know the defendant's reputation for truth and veracity. At that point an objection for the continuation of the pursuit of the subject should have been sustained. The answer eventually elicited was not material to any issue to be determined by the jury and, since it clearly implied that the defendant was an habitual thief, we cannot say in the light of the questions of credibility which the jury had to determine that it was not prejudicial. The motion for a mistrial should have been granted.

REVERSED AND REMANDED FOR NEW TRIAL.