STATE OF NEBRASKA, APPELLEE, V. JAMES ELDRED, APPELLANT.

559 N.W.2d 519

Filed February 4, 1997. No. A-96-361.

Anthony S. Troia for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and SIEVERS, Judges.

SIEVERS, Judge.
The defendant, James Eldred, was charged in August 1995 with two counts of first degree sexual assault under Neb. Rev. Stat. § 28-319(1)(a) (Cum. Supp. 1994), Class II felonies. The

charges specified that Eldred had subjected his daughter Christine to sexual penetration during the month of May 1994 in count I and during the month of August 1994 in count II. After a jury trial in late January 1996 in the Sarpy County District Court, Eldred was convicted of both counts and sentenced to not less than 5 nor more than 15 years' imprisonment on each count, with the sentences to run concurrently. Eldred now appeals to this court.

## FACTUAL BACKGROUND

James Eldred and Judy Eldred had six children. Those children included two biological daughters, Robin and Rae, and two foster daughters, Penny and Christine (Chrissy), who were adopted before they were both age 3. We mention the victim's older sisters because their testimony is significantly involved in this appeal.

The incident charged in count I allegedly occurred in May 1994 at a time when only Eldred, Judy, and Chrissy were residing in the family home. On this day in May, the last day of school, Chrissy apparently had a baseball cap stolen from her, which caused some sort of dispute between her and her father. That dispute evolved into whether she was appropriately cleaning her room. Chrissy testified that her father became angry with her, punched her in the face, then pushed her down on a bed and pulled up her shirt, pulled down her pants, and had sexual intercourse with her.

The incident charged in count II allegedly occurred in August 1994 on a night when Penny was to pick up Chrissy and take her to a dance. Penny related that she arrived a few minutes early and saw her father coming up from the basement, where a bedroom was located, zipping up his pants. Penny testified that Eldred told her that "if I got into it that the same thing would happen to me." Penny related that Chrissy's makeup was smeared all over her face, her dress was torn, and she was crying. Penny testified that Chrissy said that her father had forced her to have sex with him. At this time, Eldred was in his sixties and Chrissy was 15. Chrissy testified that on the day of the incident she had gotten in a fight with her father because he did not want her going to the dance with Penny and that he had been

drinking. After a jury trial, Eldred was convicted of both counts of sexual assault.

Because evidentiary rulings during the testimony of the other daughters are assigned as error, we withhold further detailing of that evidence until discussion of those individual assignments of error. However, at the outset, it may be of benefit to state that the case has a certain overtone to it. Summarized and simplified, it is that an adopted daughter's (Chrissy's) claim of sexual molestation by her father is supported by Penny, another adopted child of the defendant. The defendant father attempted to bolster his denial of such conduct by attacking the credibility of Chrissy and Penny with testimony from his two biological daughters, Robin and Rae.

## ASSIGNMENTS OF ERROR

Eldred alleges that the district court erred when (1) it refused to allow Robin to testify to an inconsistent statement made by her sister Penny, (2) it refused the testimony of Robin and Rae regarding the reputation for truthfulness of their sister Penny, (3) it refused the testimony of Robin and Rae regarding the reputation for truthfulness of Chrissy, (4) it allowed Penny to testify as to what Chrissy told her about the August sexual assault the night the incident occurred, (5) it refused to allow Eldred to testify that he had filed a complaint against Chrissy in juvenile court, and (6) it imposed excessive sentences.

. . .

## STANDARD OF REVIEW

■ In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, except in those instances under the Nebraska Evidence Rules where judicial discretion is a factor involved in the admissibility of evidence. *State v. Anderson*, 245 Neb. 237, 512 N.W.2d 367 (1994). Where discretion is involved in the admission of evidence, the appellate court reviews rulings on evidence for an abuse of discretion. *State v. Eona*, 248 Neb. 318, 534 N.W.2d 323 (1995).

## ANALYSIS

*Robin's Testimony About Penny's Allegedly Inconsistent Statement.*

Eldred alleges that the trial court erred when it did not allow him to question Robin about whether Penny had stated to Robin that Penny had made up the allegation that Eldred sexually assaulted Chrissy. However, the record of the trial does not support Eldred's claim that Eldred attempted to elicit this testimony.

In addition to her testimony of her observations regarding the August 1994 incident and the statement Chrissy made to her that Eldred sexually assaulted her, Penny testified at trial that she did not really have a relationship with her father while growing up because he was always drunk. She testified that she moved out of the home, but maintained a relationship with Chrissy, who remained in the home. Penny stated that there were times when she would be on the phone with Chrissy and Chrissy would have locked herself in her bedroom while Eldred would yell and scream in the background. On cross-examination, Eldred's trial counsel asked:

Q It's your testimony that Mr. Eldred was drunk all the time, most of the time was mean; is that correct?

A Yes, it is.

Q Was physically abusive. Did he hit your mom?

A Yes, he did.

Q No one was ever called on that, no police were ever called?

A There were police at our house several times.

Q Was it for Mr. Eldred abusing anybody or was it for people being uncontrollable, if you recall? You haven't been there in seven years; correct?

A Correct.

Q You are just hearing that police have been called, but you don't know why they were called.

A Yes.

Q *Did you ever tell your sisters that you made up these stories just to get your dad in trouble?*

A No, I did not.

Q When they come in and testify they are lying?

A Yes, they are.
(Emphasis supplied.)

Eldred claims in his brief on appeal that the question emphasized above referred to Penny making up the story of Eldred's sexual assault of Chrissy. Even taken in context, the question is simply too vague to know to what the phrase "these stories" refers. "[T]hese stories" could refer to the drinking, the physical abuse of Penny's mother, the yelling and screaming, the police being called, or something else. Thus, at the outset, the imprecision of the preliminary question is clearly a significant problem.

Eldred then claims in his brief that his trial counsel attempted to elicit testimony from Robin that Penny told her that she had made up stories regarding Eldred's sexual abuse of Chrissy to get her father in trouble. Eldred argues that the trial court erred when it did not allow Robin to answer. However, the record shows only this questioning: "Q Did you have a conversation with Penny about these allegations? A Yes. Q What did Penny relate to you about the statements about her father's sexual allegations?"

The prosecution objected to the second question on the basis of hearsay, and the objection was sustained. Eldred's trial counsel made no offer of proof that had Robin been allowed to testify, she would have said that Penny had told her that she made up the allegations of Eldred's sexual assault of Chrissy. On a more fundamental level, the question posed to Robin is imprecise. The question is fraught with uncertainty, including the fact that the father is not the one making allegations of a sexual nature—it is Chrissy who alleged that her father sexually assaulted her.

Error may not be predicated upon a ruling of a trial court excluding testimony of a witness unless the substance of the evidence to be offered by the testimony was made known to the trial judge by offer or was apparent from the context within which the questions were asked. *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991); Neb. Evid. R. 103, Neb. Rev. Stat. § 27-103 (Reissue 1995).

Rule 103 provides in part that error may not be predicated upon a ruling excluding evidence unless a substantial

right of the party is affected and unless "the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked." In *State v. Fonville*, 197 Neb. 220, 248 N.W.2d 27 (1976), the Supreme Court said that this statute does not appear to have changed the general rule previously applicable that where evidence is excluded, an offer of proof is generally a prerequisite to review on appeal. *Fonville* makes it clear that when no offer of proof was made, the question becomes whether the substance of the evidence was apparent from the context within which the question was asked and whether the evidence would have been material and competent. In *Fonville*, the court held that an offer of proof was necessary where it was not reasonably clear what information was sought to be elicited by the question and whether that information was material and competent.

In *State v. True*, 210 Neb. 701, 705, 316 N.W.2d 623, 626 (1982), the question at issue was this: " 'When you stated that they started talking about robbing a place, what did you mean?' " The Supreme Court found that there was no offer of proof as to what the defendant would have testified to, had he been allowed to answer, nor was there anything about the context in which the question was asked that made known "the substance of the evidence excluded." *Id.* Consequently, the assignment of error was rejected.

In *State v. Kramer*, 238 Neb. 252, 469 N.W.2d 785 (1991), it was emphasized that the purpose of the offer of proof is to bring to the attention of the trier of fact and the appellate court the substance of the evidence offered so that both the trial court and the appellate court may determine whether the refusal to accept the evidence was error, citing *Fite v. Ammco Tools, Inc.*, 199 Neb. 353, 258 N.W.2d 922 (1977). "When the condition of the record and form of the question itself shows that it is relevant and competent, no offer of proof is necessary." *Id.* at 360, 258 N.W.2d at 926. Competent evidence is evidence that is admissible and relevant on a point in issue. *Hammann v. City of Omaha*, 227 Neb. 285, 417 N.W.2d 323 (1987).

We find *State v. Kramer, supra*, particularly instructive because the question at issue there was on cross-examination, was a leading question, and obviously suggested the answer.

The question was this: " 'As a matter of fact, you have been convicted of two felonies?' " *Id.* at 258, 469 N.W.2d at 789. The State's objection on improper impeachment was sustained. No offer of proof was made regarding Drugsvold's (the witness') prior felony convictions. The Supreme Court reasoned that the record failed to show that the evidence regarding Drugsvold's alleged second felony conviction was competent because even if he had been convicted of the second felony, there was no foundation laid to establish that it had occurred within the 10-year requirement of Neb. Evid. R. 609(2), Neb. Rev. Stat. § 27-609(2) (Reissue 1995). The Supreme Court further reasoned that after the objection was properly -sustained, the defendant failed to provide the required foundational information by further examination or by making an offer of proof. Without that, the Supreme Court found that the trial court did not err in excluding evidence of the alleged second felony conviction. See, also, *State v. Bennett*, 2 Neb. App. 188, 508 N.W.2d 294 (1993) (reasoning that speculation as to the evidence which the examiner seeks to elicit does not provide the substance of the evidence necessary to dispense with an offer of proof). In short, the case law teaches that it would be an unusual circumstance where an offer of proof would not be required in order to enable the trial court, and the appellate courts, to know what the evidence is which the questioner seeks to elicit.

Because we are unable to determine from the questions and the context thereof what evidence Eldred's trial counsel was attempting to offer and whether it was competent, the claim of error cannot be sustained because there was no offer of proof to overcome these deficiencies.

*Robin's Testimony About Penny's Reputation for Truthfulness.*

Eldred alleges on appeal that he attempted to elicit testimony from Robin regarding Penny's reputation for truthfulness and that the trial court erred when it did not allow such testimony. Eldred's trial counsel asked Robin the following questions:

Q How long have you known Penny?

A From the time she came to live with us as a foster child when she was two and a half years old.

Q She developed some friends?

A On occasion, yes.

Q Have you had conversation[s] with these friends and relatives about Penny and her truthfulness?

The last question was then objected to, but without specification of the basis for the objection. The trial court ruled: "On relevance sustained."

■ Neb. Evid. R. 608, Neb. Rev. Stat. § 27-608 (Reissue 1995), allows the credibility of a witness to be attacked or supported by evidence in the form of reputation or opinion, but such evidence may refer only to character for truthfulness or untruthfulness. A witness' testimony regarding the reputation for truthfulness of another witness must be based on "what is the general reputation for truth and veracity of the person sought to be impeached in the neighborhood or community where he resides." *Lee v. State*, 147 Neb. 333, 338, 23 N.W.2d 316, 320 (1946), *overruled on other grounds, Knihal v. State*, 150 Neb. 771, 36 N.W.2d 109 (1949). See, also, *State v. Craig*, 192 Neb. 347, 220 N.W.2d 241 (1974); *State v. Oliva*, 183 Neb. 620, 163 N.W.2d 112 (1968).

■ The reputation of a witness for truthfulness or untruthfulness must be proved by a witness qualified by an opportunity to obtain knowledge of it. 3 John H. Wigmore, Evidence in Trials at Common Law § 691 (James H. Chadbourn rev. 1970). "The first step here consists in an application of the general principle . . . that a witness must *expressly appear to have had the means of knowledge,* before his testimony can proceed." (Emphasis in original.) *Id.* at 19. Thus, the foundational question asked by Eldred's trial counsel was clearly proper, as it went to the basis of Robin's knowledge about Penny's character for truthfulness. The court erred when it sustained the State's objection on the basis that the question sought irrelevant information.

The question at issue was a foundational question—whether Robin had had an opportunity to discuss Penny's truthfulness with Penny's friends and relatives. It called for a yes or no answer; however, again Eldred's trial counsel did not make an offer of proof. We simply do not know from the record what Robin's answer would have been—and as was demonstrated by *State v. Kramer*, 238 Neb. 252, 469 N.W.2d 785 (1991), the mere fact that a helpful response could be expected by virtue of

the form of the question and who is asking it simply is not enough. Moreover, Eldred's trial counsel did not ask Robin the ultimate question: What was Penny's reputation in the community concerning her character for truthfulness? We do not know whether Eldred's trial counsel would have eventually asked Robin what Penny's reputation or character concerning truthfulness was, or what Robin's answer would have been, because again Eldred's trial counsel did not make an offer of proof. The substance of the evidence to be offered by the testimony is not apparent from the context within which the questions were asked. Because the alleged error was not properly preserved for review, we cannot determine the merits of Eldred's second assignment of error.

*Robin's Testimony Regarding Chrissy's Reputation for Truthfulness.*

Eldred alleges the trial court erred when it did not allow him to ask Robin about Chrissy's reputation for truthfulness. On this subject, Eldred's trial counsel asked only the following questions of Robin: "Q Did Chrissy develop friends in the neighborhood? A Yes. . . . Q Have you talked to these friends about Chrissy and her truthfulness?" The prosecution objected to the second question on relevance, and the court sustained the objection.

The preceding analysis concerning the questions asked of Robin about Penny applies here. This was a proper foundational question calling for a yes or no answer, and the sustaining of the objection was wrong. However, Eldred's trial counsel did not make an offer of proof as to what the answer to the question would be, he did not ask Robin what Chrissy's reputation for truthfulness was, and he failed to make an offer of proof that had he asked what Chrissy's reputation for truthfulness was and had Robin answered, such testimony would have been favorable to Eldred. We cannot determine from the context of the one · question what Robin's testimony would have been regarding Chrissy's reputation for truthfulness, and therefore an offer of proof was necessary. As was the case regarding Penny's reputation for truthfulness, Eldred's trial counsel failed to preserve this alleged error concerning Robin's testimony about Chrissy.

However, Eldred's trial counsel then asked Robin: "In your opinion is Chrissy a truthful person?" The prosecution objected to this question on the basis of relevance, and the trial court sustained the objection. This ruling is also assigned as error. Eldred's trial counsel did not make an offer of proof regarding what the opinion would have been and ceased his questioning of Robin.

Historically, courts excluded opinion evidence as to a witness' truthfulness or untruthfulness, but allowed the character witness to testify as to the witness' reputation for truthfulness. 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 608[04] (1996). Prior to the adoption of rule 608 in 1975, the Nebraska Supreme Court held that an impeaching witness was not entitled to give his own opinion of a witness' truth and veracity. *State v. Craig*, 192 Neb. 347, 220 N.W.2d 241 (1974). See, also, *State v. Oliva*, 183 Neb. 620, 163 N.W.2d 112 (1968); *Lee v. State*, 147 Neb. 333, 23 N.W.2d 316 (1946), *overruled on other grounds, Knihal v. State*, 150 Neb. 771, 36 N.W.2d 109 (1949).

However, adoption of rule 608 in 1975 constituted a departure from the previous practice. See 3 Weinstein & Berger, *supra*.

> Witnesses may now be asked directly to state their opinion of the principal witness's character for truthfulness and they may answer for example, "I think X is a liar." The rule imposes no prerequisites conditioned upon long acquaintance or recent information about the witnesses; cross-examination can be expected to expose defects of lack of familiarity and to reveal reliance on isolated or irrelevant instances of misconduct or the existence of feelings of personal hostility towards the principal witness. Nevertheless, if the court finds the witness lacks sufficient information to have formed a reliable opinion, it can exclude the opinion under Rules 403 and 602.

*Id.* at 608-30 to 608-32.

█ It is important to distinguish between a witness testifying that "John Smith, in my opinion, is a liar" and the same witness testifying that "the testimony which John Smith gave this morning about the auto accident is a lie." The former may be admis-

sible, but the latter clearly is not. In *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989), the court discussed the matter in the context of not allowing a police officer to testify that in his opinion a victim had been sexually abused. The court held:

> [I]t is totally improper for one witness to testify as to the credibility of another witness. The question of any witness' credibility is for the jury. Deputy Day's testimony may be construed as stating that the child's testimony is true. In that context, it is improper to permit any evidence that a witness is truthful, except under the provisions of Neb. Evid. R. 608 (Neb. Rev. Stat. § 27-608 (Reissue 1985)), which permits testimony, under certain conditions, concerning the character of a witness for truthfulness. This testimony was not of that type.

231 Neb. at 396, 436 N.W.2d at 509. See, also, *State v. Doan*, 1 Neb. App. 484, 498 N.W.2d 804 (1993) (conviction reversed where counselor testified that child's account of sexual abuse had been validated).

█ Neb. Evid. R. 602, Neb. Rev. Stat. § 27-602 (Reissue 1995), provides, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." In addition, opinion testimony of a lay witness is limited by Neb. Evid. R. 701, Neb. Rev. Stat. § 27-701 (Reissue 1995), to opinions which are rationally based on the perception of the witness. See, *U.S. v. Cortez*, 935 F.2d 135 (8th Cir. 1991), *cert. denied* 502 U.S. 1062, 112 S. Ct. 945, 117 L. Ed. 2d 114 (1992); *United States v. Dotson*, 799 F.2d 189 (5th Cir. 1986). In deciding whether to admit an opinion as to a witness' credibility, a court may consider how well the witness knew the witness to be impeached and under what circumstances the witness giving the opinion knew the witness to be impeached. *United States v. Mandel*, 591 F.2d 1347 (4th Cir. 1979), *vacated on other grounds by an equally divided court, on rehearing* 602 F.2d 653 (en banc), *cert. denied* 445 U.S. 961, 100 S. Ct. 1647, 64 L. Ed. 2d 236 (1980). See, also, *U.S. v. Cortez, supra; United States v. Dotson, supra.*

In *Dotson*, the trial court admitted the testimony of three government agents who testified that Dotson and his witnesses were not to be believed. The *Dotson* court held that there was

improper foundation for such opinion testimony because the only knowledge behind such opinions was the fact that the agents took part in a criminal investigation of Dotson. "No other testimony was elicited with respect to how long the agents had known Dotson, or in what way they had acted to form their opinions of his veracity." *Id.* at 193.

In contrast, in *Honey v. People*, 713 P.2d 1300 (Colo. 1986), the court found that there was sufficient foundation laid for the opinion testimony of an employer of a witness to allow him to testify as to his opinion regarding the witness' character for veracity. There, foundational questions established that the employer saw the witness at least once a week and sometimes two or three times a week over a 2-month period, which the court found gave the employer "ample opportunity to observe whether Kadovitz [the witness] did the work that he said he would do [and] whether Kadovitz deposited rental payments and kept proper records," facts which the employer used as a basis for his ultimate conclusion that the witness was untruthful. *Id.* at 1303.

In the case at hand, the trial court erroneously sustained the objection on the basis of relevance, as rule 608 expressly provides that "[t]he credibility of a witness may be attacked or supported by evidence in the form of reputation or *opinion* . . . ." (Emphasis supplied.) A proper objection would have been on the basis of foundation, which would call into question how Robin knew what she was being asked about. The court was incorrect when it sustained the prosecutor's objection. Credibility of a witness is always relevant. This is especially so when the witness whose credibility is under examination is the accusing party in a sexual assault case without witnesses to the assault and no trace of physical evidence. In short, this case turns on the credibility of Chrissy, and to convict Eldred, the jury must believe her testimony. That said, we turn to the next step in our analysis, which is whether the trial court's error resulted in prejudice. With no offer of proof of Robin's opinion as to Chrissy's truthfulness, we cannot say that Eldred has been prejudiced by the erroneous sustaining of the objection. See *State v. Kramer*, 238 Neb. 252, 469 N.W.2d 785 (1991).

*Rae's Opinion Regarding Chrissy's Truthfulness.*

Eldred's trial counsel asked Rae, "Have you been around Chrissy long enough to form an opinion about her truthfulness?" The State objected to the question, and the court sustained the State's objection. Eldred's trial counsel did not make an offer of proof regarding whether Rae would have answered that she had been around Chrissy long enough to form an opinion, nor did he ask what that opinion was, nor did he make an offer of proof about what that opinion was. Because we can only speculate on what the evidence might have ultimately been from the question asked, Eldred's trial counsel failed to preserve this alleged error for our review. See *State v. Kramer, supra.*

*Admissibility of Penny's Testimony as to What Chrissy Told Her About Attack.*

Penny testified at trial that she had made plans with Chrissy to go to a dance with her in August 1994 and that she had talked to Chrissy about an hour before Penny arrived at the house. At the time Penny talked to her on the phone, Chrissy had her makeup on and her "hair was done." Penny stated she arrived about 10 minutes earlier than planned and that she walked into the house without knocking. Penny stated that as she walked into the house, Eldred was coming upstairs zipping his pants. Penny stated that Chrissy's makeup was smeared all over her face, her dress was torn, and she was crying. Penny stated that Eldred told her that "if I got into it that the same thing would happen to me." Penny stated that the next thing she did was to take Chrissy out of the house. Penny stated that Chrissy was crying and that Chrissy told her that Eldred "had forced her to have sex with him." Eldred's trial counsel objected on the basis of hearsay. Eldred alleges on appeal that Penny's recounting of what Chrissy told her was inadmissible hearsay because it was not an excited utterance.

Whether the statement fits into the excited utterance exception to the hearsay rule does not matter because we are not convinced that the testimony was hearsay. Chrissy testified at trial that she had made the same statement to Penny. Chrissy was also cross-examined regarding an incident in which she

retracted or recanted her earlier allegation of sexual assault. Chrissy testified that in June 1995 she recanted her statement that her father had sexually assaulted her to Mary Tyner, her probation officer. Chrissy testified that she recanted to Tyner because she wanted to go home and not remain in foster care.

■ Under Neb. Evid. R. 801(4), Neb. Rev. Stat. § 27-801(4) (Reissue 1995), a statement is not hearsay if "(a) [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]"

■ In *State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996), the court held that rule 801(4)(a)(ii) permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication "only when those statements were made before the charged recent fabrication or improper influence or motive." 251 Neb. at 34, 554 N.W.2d at 634. In this case, the out-of-court statement was made immediately after Penny and Chrissy left the house after Eldred's assault upon Chrissy. The alleged recent fabrication was when Chrissy testified at trial almost a year after the out-of-court statement was made. Thus, when Chrissy's testimony was attacked as a "recent fabrication" by evidence of her recantation to Tyner, her prior consistent statement to Penny on the night of the alleged attack was not hearsay. The statement was admissible to rebut the charge of recent fabrication under rule 801(4)(a)(ii).

*Introduction of Evidence Regarding Eldred's Act of Filing Complaint Against Chrissy in Juvenile Court.*

■ Eldred alleges the trial court erred when it did not let him testify that he had filed a complaint against Chrissy in juvenile court. His theory is that her charge against him was in retaliation for such complaint. Whether or not he should have been allowed to so testify, we find that there was no error because the evidence would have been merely cumulative. Generally, any error in excluding evidence that is cumulative is not prejudicial. *State v. Harrison*, 221 Neb. 521, 378 N.W.2d 199 (1985). Diane Martig, a protective services worker with the Department of

Social Services, testified under cross-examination by Eldred's attorney that Eldred had contacted Chrissy's probation officer and asked for assistance because she was becoming uncontrollable, "and then he elaborated further allegations of her behavior," such as stealing checks. Martig was then asked, "So she either ran away from home or was in the process of being placed in foster care or something through Juvenile Court; is that correct?" Martig answered, "Yes." We do not believe Eldred was prejudiced by the court's not allowing him to testify that he had filed a complaint about Chrissy with the juvenile court system because Chrissy's involvement with the juvenile justice system was before the jury via Martig's testimony. Therefore, this assignment of error is without merit.

*Excessive Sentences.*

▆▆ Eldred alleges that his sentences of 5 to 15 years' imprisonment for each count of first degree sexual assault, to be served concurrently, were excessive. First degree sexual assault is a Class II felony, punishable by 1 to 50 years' imprisonment. Unless the sentencing court has abused its discretion in imposing a sentence within the statutory limits, such sentence will not be disturbed upon appeal. *State v. Baker*, 250 Neb. 896, 553 N.W.2d 464 (1996).

Eldred alleges that the remarks the court made during the sentencing hearing indicated an abuse of discretion. We disagree. At sentencing, Eldred stated that he did not sexually assault Chrissy and that she lied. The court stated:

> Could the jury have possibly been wrong? Sure, possibly. It takes a lot larger power than what we have here to decide that. I have full faith in the jury system. I heard it, I heard the evidence in the case and I fully believe the girls, and, quite frankly, the conduct that you engaged in is reprehensible.

Eldred alleges that this statement means that the court had already made up its mind regarding Eldred's guilt before the jury verdict and therefore gave Eldred excessive sentences. Quite frankly, Eldred reads far too much into the statement. Eldred continued to assert his innocence at sentencing, and the judge was certainly free to state that, contrary to Eldred's contention, he had concluded that Chrissy was not lying. Whether

the trial judge, in his own mind, arrived at the conclusion that Eldred was guilty before the jury returned its verdict is really meaningless on a claim of excessive sentence. The question is whether the sentences are excessive, and they are not. Finding no abuse of discretion, we affirm Eldred's sentences. Finding no error prejudicial to Eldred, we affirm his convictions.

AFFIRMED.