STATE OF NEBRASKA, APPELLEE, V.
BYRON J. WEAVER, APPELLANT.
677 N.W.2d 502

Filed April 16, 2004.   No. S-03-458.

Dennis R. Keefe, Lancaster County Public Defender, Scott P. Helvie, and Shawn Elliott for appellant.

Jon Bruning, Attorney General, and Jeffrey J. Lux for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and IRWIN, Chief Judge.

WRIGHT, J.

## NATURE OF CASE

Byron J. Weaver was charged by information with first degree murder. After a trial, the jury returned a verdict finding Weaver guilty of the lesser-included offense of second degree murder. Weaver was sentenced to a term of 60 years to life in prison. We are presented with Weaver's direct appeal of this judgment and sentence.

## SCOPE OF REVIEW

Whether jury instructions given by a trial court are correct is a question of law. *State v. Mata,* 266 Neb. 668, 668 N.W.2d 448 (2003). On a question of law, an appellate court is obligated to

reach a conclusion independent of the determination reached by the court below. *Id.*

■ When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Leibhart*, 266 Neb. 133, 662 N.W.2d 618 (2003).

■ In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003).

■ Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Hurbenca*, 266 Neb. 853, 669 N.W.2d 668 (2003).

## FACTS

Weaver was charged with first degree murder following the death of Marie Hall, his maternal grandmother. At the time of her death, Hall was 70 years old and living in an apartment in Lincoln, Nebraska. Hall had spoken with her son by telephone on the evening of August 6, 2001. The following morning, Hall failed to show up to perform some volunteer work. When a friend who volunteered with Hall tried to telephone her and Hall did not answer, the friend left a message on Hall's answering machine. The friend then attempted to contact Hall's daughter, leaving a message on her answering machine as well. Hall's daughter returned from a vacation on August 12 and was unable to contact Hall. She then drove to Lincoln from Nebraska City and discovered Hall's body.

The police found Hall's body in a closet in her apartment underneath a layer of blankets and pillows. The body was in a state of advanced decomposition. The police found no signs of forced entry. A newspaper dated August 6, 2001, which appeared

to have been read, was found in the apartment. Newspapers dated August 8 and 9 were found in the apartment but did not appear to have been read. Outside the door to the apartment, newspapers dated August 10, 11, and 12 were found in a stack. The police were unable to find Hall's car in the apartment's parking lot.

Dr. Patrick Keelan performed the autopsy on Hall's body. At trial, Keelan testified that in his opinion, Hall died as a result of asphyxiation by ligature strangulation. He estimated that she died 5 to 7 days before the autopsy.

Dr. Mathias Okoye issued the final autopsy report. This report indicated that Hall's death was the result of asphyxia by strangulation and that the manner of her death was homicide. At trial, Okoye reiterated his opinion as to the cause and manner of death.

Weaver was 20 years old in August 2001. He had moved back to Lincoln after living for more than a year in Wyoming. After returning to Lincoln, he had some contact with Hall.

At trial, Weaver testified as to his version of the events of August 7, 2001. That morning, Weaver was to begin work at a new job, and he was driven to the worksite by a friend. Upon arriving at the worksite, Weaver decided that he did not want to work that day, and he walked off the site. He then walked to Hall's apartment to inquire about temporarily staying with her.

Weaver stated that when he arrived at Hall's apartment complex, she did not respond to his request to be allowed inside the security door. Weaver said he then walked around to the back of Hall's apartment. When he looked through a glass door, he observed Hall lying face down in the apartment. The back door was open, so Weaver let himself into the apartment and turned Hall over, which caused blood to trickle from her mouth. He then unsuccessfully attempted to resuscitate Hall using CPR.

Weaver said that once it became clear Hall was dead, he thought about calling the 911 emergency dispatch service, but he panicked at the thought of potentially being a suspect in her death. He also decided against calling his father or paternal grandparents. Weaver testified that his thinking became "mixed" and "non-logical" and that he decided to try to put Hall "at rest." He placed her in a closet, a decision that he stated was "obviously a wrong or poor" one. According to Weaver, he arranged pillows and blankets around the body once he had placed it in the closet.

He said he locked the back door, grabbed Hall's purse, and left the apartment. Weaver took Hall's purse because he thought her car keys might be inside.

That night, Weaver and a friend drove Hall's car to a party in Lincoln and then set out toward Omaha. En route, Hall's car was involved in a one-vehicle accident. The car had to be towed due to the damage sustained in the accident. While completing an inventory of the car's contents, the police found Hall's purse. Weaver did not tell the police about the death of Hall. He later returned to Lincoln.

A few days later, the Lincoln Police Department learned that Hall's car was located in a Sarpy County tow lot. A shirt found in the car was stained with blood that matched Hall's DNA. On August 13, 2001, Weaver was interviewed by a Lincoln police officer, and Weaver said that he had not seen Hall for 1½ weeks. In an information filed in the Lancaster County District Court on October 9, Weaver was charged with first degree murder. He was arraigned on October 10 and entered a plea of not guilty.

At the conclusion of the trial, the jury was instructed that, depending on the evidence, it could find Weaver guilty of first degree murder, guilty of second degree murder, guilty of manslaughter, or not guilty. On January 31, 2003, the jury returned a verdict finding Weaver guilty of second degree murder. Weaver was sentenced to a term of 60 years to life in prison.

## ASSIGNMENTS OF ERROR

Weaver assigns the following errors: (1) The district court erred in permitting the jury to consider the lesser-included offenses of second degree murder and manslaughter, (2) the court erred in the manner in which it instructed the jury on the material elements of second degree murder, (3) the court erred in the manner in which it instructed the jury on the definition of premeditation, (4) the evidence was not sufficient for the jury to find Weaver guilty of second degree murder, and (5) the court erred in imposing an excessive sentence.

## ANALYSIS

### INSTRUCTION ON LESSER-INCLUDED OFFENSES

Weaver argues that it was error for the district court to instruct the jury on the lesser-included offenses of second degree

murder and manslaughter. Whether jury instructions given by a trial court are correct is a question of law. *State v. Mata,* 266 Neb. 668, 668 N.W.2d 448 (2003). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.* In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Putz,* 266 Neb. 37, 662 N.W.2d 606 (2003).

Neb. Rev. Stat. § 29-2027 (Supp. 2003) states in pertinent part: "In all trials for murder the jury before whom such trial is had, if they find the prisoner guilty thereof, shall ascertain in their verdict whether it is murder in the first or second degree or manslaughter . . . ." In *State v. Archbold,* 217 Neb. 345, 350, 350 N.W.2d 500, 504 (1984), we stated that "[w]hen a proper, factual basis is present, a court must instruct a jury on the degrees of criminal homicide, that is, the provisions of § 29-2027 are mandatory."

In the case at bar, Weaver asserts that the district court's instruction on second degree murder and manslaughter was erroneous. He first argues there was insufficient evidence to justify instructing on the lesser-included offenses. In support of this argument, Weaver cites *State v. McCracken,* 260 Neb. 234, 615 N.W.2d 902 (2000), *abrogated on other grounds, State v. Thomas,* 262 Neb. 985, 637 N.W.2d 632 (2002), a homicide case wherein we upheld a trial court's refusal to instruct on lesser-included offenses.

In *McCracken,* we quoted the two-pronged test enunciated in *State v. Williams,* 243 Neb. 959, 503 N.W.2d 561 (1993), with regard to determining whether an instruction on lesser-included offenses is proper:

"[A] court must instruct on a lesser-included offense if (1) the elements of the lesser offense . . . are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense."

*McCracken,* 260 Neb. at 250, 615 N.W.2d at 917. In *McCracken,* the record showed that the defendant had deliberately planned the murder. Therefore, there was no basis for giving an instruction on

second degree murder or manslaughter. Accordingly, the trial court's refusal to instruct the jury on lesser-included offenses was proper.

■ We also interpreted § 29-2027 in *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981), which involved the direct appeal of a defendant who had been convicted of manslaughter. One of the errors assigned was the trial court's instructions regarding first and second degree murder. The evidence linking the defendant to the crime was largely of a circumstantial nature. The victim was discovered in a secluded area, and there were no eyewitnesses to her death. We stated that "ordinarily, in a case charging first degree murder, where there is no eyewitness to the act, and the evidence is largely circumstantial, the jury should be instructed as to the law governing murder in the first degree, second degree, and manslaughter." *Id.* at 389, 303 N.W.2d at 748, citing *Bourne v. State*, 116 Neb. 141, 216 N.W. 173 (1927). Under the facts presented, we held that the jury was properly instructed by the trial court.

In the case at bar, as in *Ellis*, there were no eyewitnesses to the death of Hall. In addition, the evidence linking Weaver to Hall's death was largely circumstantial. The State presented evidence of encounters between Weaver and Hall during the summer of 2001 during which Weaver's requests for money were denied. The police found no signs of forced entry into Hall's apartment, which could have suggested to the jury that Hall was familiar with whomever killed her. Weaver admitted to taking Hall's car and purse after her death and admitted to lying to law enforcement officers in the days following Hall's death. The testimony of Keelan and Okoye established that Hall died by ligature strangulation during a period of time when Weaver's admissions and other evidence placed him at the scene.

■ Whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. *State v. Adams*, 251 Neb. 461, 558 N.W.2d 298 (1997). Because of this duty, the trial court, on its own motion, must correctly instruct on the law. *Id.* In view of the fact that there were no eyewitnesses to Hall's death and that the evidence adduced was largely circumstantial, the district court was required to instruct the jury as to the lesser-included offenses of second

degree murder and manslaughter. The instruction given was correct. Weaver's argument that the State presented insufficient evidence to justify this instruction is without merit.

Weaver's second argument regarding the jury instruction on lesser-included offenses is that *Ellis* stands only as a "rule of thumb" for the application of § 29-2027. He asserts that given advances in DNA technology and his own admission that he was in the apartment near the time of Hall's death, the lack of an eyewitness to the death did not justify giving the instruction on lesser-included offenses. However, this argument ignores that it is the combination of the circumstantial evidence and the fact that there were no eyewitnesses that requires the application of § 29-2027.

Weaver has not sustained his burden of showing that the instruction on second degree murder and manslaughter was prejudicial or otherwise adversely affected a substantial right. Accordingly, this assignment of error is without merit.

SECOND DEGREE MURDER INSTRUCTION

Weaver assigns as error the manner in which the district court instructed the jury as to the material elements of second degree murder. Under Neb. Rev. Stat. § 28-304 (Reissue 1995), a person commits second degree murder if he causes the death of a person intentionally, but without premeditation.

> Essentially, Weaver argues that the current way in which the [L]egislature has chosen to define first degree and second degree murder does not make logical sense, and therefore, an accused runs the risk of being convicted by a jury as a result of a compromise verdict rather than a verdict based upon proof beyond a reasonable doubt as to all material elements.

Brief for appellant at 40. Weaver argues that the court should "consider the jury instruction for first degree and second degree murder together." See *id.* "[I]t is logical to conclude . . . that the jury would consider the instructions together." *Id.* at 41. Weaver claims that due to this fundamental flaw in the manner in which the district court instructed the jury as to first and second degree murder, the verdict was unreliable, since it could have been based upon a compromise rather than proof beyond a reasonable doubt.

The district court gave the following instruction on second degree murder:

> The material elements which the [S]tate must prove by evidence beyond a reasonable doubt in order to convict the defendant of the crime of murder in the second degree are:
> 1. That the defendant, Byron J. Weaver, killed Marie Hall.
> 2. That he did so intentionally, but without premeditation.
> 3. That he did so on or about August 7, 2001.
> 4. That he did so in Lancaster County, Nebraska.

Jury instructions must be read as a whole, and if they fairly present the law so that the jury could not be misled, there is no prejudicial error. *State v. Brown*, 258 Neb. 330, 603 N.W.2d 419 (1999). A comparison of § 28-304 and the jury instruction given shows that the instruction, read as a whole, fairly presented the law. All of the material elements that constitute the statutory definition were reflected in the instruction. As such, we must conclude that the giving of this instruction was not error. Weaver has failed to satisfy his burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right, and this assignment of error is without merit.

### INSTRUCTION DEFINING PREMEDITATION

Weaver argues that the district court erred in the manner in which it instructed the jury on the definition of premeditation. Premeditation was defined in the instructions as "a design formed to do something before it is done." The jury was instructed that the time needed for premeditation may be "so short as to be instantaneous provided that the intent to act is formed before the act and not simultaneously with the act." Neb. Rev. Stat. § 28-302(3) (Reissue 1995) defines premeditation as "a design formed to do something before it is done."

Weaver is asking this court to overrule our decision in *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996). *McBride* involved the direct appeal of a conviction for first degree murder wherein the appellant challenged a jury instruction defining premeditation. Premeditation was defined almost exactly as it was defined in the present case. The appellant argued that the nonstatutory language confused and misled the jury by blurring the distinctions between first degree murder, second degree murder,

and manslaughter. We held that "[t]he additional statement in the instruction given by the court merely stated a correct proposition of the law," and we found that the appellant was not prejudiced by the instruction. See *id.* at 664, 550 N.W.2d at 678.

Unlike the appellant in *McBride*, who was convicted of first degree murder, Weaver was convicted of second degree murder. The jury found that Weaver acted without premeditation. Therefore, Weaver could not have been prejudiced by the instruction defining premeditation. Weaver has not shown that this instruction was prejudicial or otherwise adversely affected a substantial right. This assignment of error is without merit.

### SUFFICIENCY OF EVIDENCE

Weaver argues that the evidence presented at trial was insufficient for the jury to conclude that he was guilty beyond a reasonable doubt of second degree murder. Specifically, he suggests that the State failed to present sufficient evidence that Hall's death was an act of homicide and not the result of natural causes.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Leibhart*, 266 Neb. 133, 662 N.W.2d 618 (2003). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003).

To prove its case that Hall was murdered and did not die from natural causes, the State presented the testimony of two pathologists: Keelan and Okoye. Keelan, an assistant coroner's physician for Lancaster County, testified as to the performance of Hall's autopsy and the conclusions that he ultimately drew from the examination. Keelan testified that his external examination revealed an area on Hall's neck that suggested injury, not merely

decomposition. This was supported by his internal examination, which revealed evidence of injury in an area extending from underneath the chin to the posterior of the neck. Keelan opined that Hall died as a result of ligature strangulation. He stated that aside from decomposition, he saw no disease process at work during his internal examination, and that decomposition would have made it impossible to tell whether Hall was suffering from heart disease.

Okoye, a forensic pathologist and the Lancaster County coroner's physician, testified to having performed more than 10,000 autopsies. He did not perform Hall's autopsy, but he issued the final report on the autopsy. Okoye confirmed Keelan's findings of internal and external neck injury caused by strangulation, not decomposition. Okoye's examination of Hall's eyes revealed evidence of hemorrhaging, which he testified was an indication of asphyxiation. He also found hemorrhaging in the neck strap muscles that was not caused by decomposition. Okoye also concluded that Hall died as a result of ligature strangulation. He testified that the evidence he reviewed did not suggest that Hall died of a heart attack.

Weaver presented the testimony of Hall's physician and a pathologist who had reviewed her autopsy report. The testimony of the physicians who served as witnesses during the trial presented the jury with a number of possible conclusions that could be drawn from the evidence. Pursuant to our scope of review, this court does not resolve these conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence.

The State presented the testimony of two pathologists who concluded that Hall's death was caused by ligature strangulation. When viewing this evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of the crime of second degree murder were proved beyond a reasonable doubt. The record contains sufficient evidence to sustain Weaver's conviction, and this assignment of error has no merit.

EXCESSIVE SENTENCE

Weaver asserts that the district court imposed an excessive sentence. Weaver was convicted of second degree murder, a Class IB

felony punishable by a minimum of 20 years' imprisonment and a maximum of life imprisonment. See § 28-304(2) and Neb. Rev. Stat. § 28-105 (Cum. Supp. 2002). Weaver was sentenced to a term of imprisonment of 60 years to life.

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Hurbenca*, 266 Neb. 853, 669 N.W.2d 668 (2003). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Smith*, 266 Neb. 707, 668 N.W.2d 482 (2003).

In imposing a sentence, a judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Timmens*, 263 Neb. 622, 641 N.W.2d 383 (2002). In considering a sentence, the sentencing court is not limited in its discretion to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id.*

In arguing that the district court abused its discretion in imposing his sentence, Weaver points to his minimal criminal record. Weaver was never arrested as a juvenile, but was arrested twice as an adult before his arrest on this charge. He was first arrested for assault, a charge that was reduced to disturbing the peace, for which he paid a $200 fine. His second arrest was for robbery. This charge was dismissed so that Weaver could take part in a pretrial diversion program. However, his entry into the program was rejected after his arrest for first degree murder.

Weaver also argues that the district court abused its discretion by failing to consider his age and his troubled upbringing. At the time of his arrest, Weaver was 20 years old. His parents divorced when he was 9 years old, and he has stated that his parents have had problems with alcohol abuse. Weaver described a deterioration in his relationship with his mother over the years and stated

that his mother verbally abused him. A woman with whom he and his father lived became somewhat of a stepmother to Weaver, but she committed suicide when Weaver was 13 years old.

It appears from the presentence investigation report that the district court was aware of these circumstances when it considered the sentence to be imposed. The court also had before it the evidence presented with regard to Weaver's actions before, during, and after arriving at Hall's apartment on August 7, 2001. Considering the totality of the circumstances, we cannot say that the district court abused its discretion in sentencing Weaver as it did. Weaver's assignment of error regarding the imposition of an excessive sentence is without merit.

## CONCLUSION

For the reasons stated herein, Weaver's conviction and sentence are affirmed.

AFFIRMED.

HENDRY, C.J., not participating.