Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2016 12:12 PM CDT

State of Nebraska, appellee, v.
Clinton Brooks, appellant.
___ N.W.2d ___

Filed February 2, 2016.    No. A-15-017.

1. **Trial: Evidence: Appeal and Error.** An appellate court reviews the trial court's conclusions with regard to evidentiary foundation for an abuse of discretion.
2. **Rules of Evidence: Witnesses.** Neb. Evid. R. 608, Neb. Rev. Stat. § 27-608 (Reissue 2008), allows the credibility of a witness to be attacked by evidence in the form of reputation or opinion, but such evidence may refer only to the witness' character for truthfulness or untruthfulness.
3. **Trial: Witnesses: Proof.** The reputation of a witness for truthfulness or untruthfulness must be proved by a witness qualified by an opportunity to obtain knowledge of it.
4. **Evidence: Words and Phrases.** Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
5. **Trial: Evidence: Appeal and Error.** A trial court's decision regarding relevancy determinations will not be reversed absent an abuse of discretion.
6. **Rules of Evidence: Words and Phrases.** Neb. Evid. R. 404(1)(a), Neb. Rev. Stat. § 27-404(1)(a) (Cum. Supp. 2014), allows a criminal defendant to offer evidence of a pertinent trait of his or her character. In a criminal action, pertinent traits are those involved in the crime on trial, such as honesty in a theft case.
7. **Evidence: Other Acts.** Evidence of a defendant's prior bad acts is not admissible to prove that the defendant acted in conformity therewith on the occasion in question.
8. **Trial: Jury Instructions: Pleadings: Evidence: Appeal and Error.** Failure to object to a jury instruction after it has been submitted to

counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice. Nonetheless, whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. Because of this duty, the trial court, on its own motion, must correctly instruct on the law.

9. **Criminal Law: Evidence: New Trial: Appeal and Error.** Upon finding error in a criminal trial, the reviewing court must determine whether all evidence admitted by the trial court was sufficient to sustain the conviction before remanding for a new trial.

10. **Double Jeopardy: Evidence: New Trial: Appeal and Error.** The Double Jeopardy Clause does not forbid a retrial so long as the sum of the evidence admitted by a trial court would have been sufficient to sustain a guilty verdict.

11. **Evidence: New Trial: Appeal and Error.** When considering the sufficiency of the evidence in determining whether to remand for a new trial or to dismiss, an appellate court must consider all the evidence admitted by the trial court irrespective of the correctness of that admission.

12. **Appeal and Error.** An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.

13. **Evidence: Other Acts.** Prior conduct that is inextricably intertwined with the charged crime is admissible to complete the story or provide a total picture of the charged crime.

14. **Sentences: Words and Phrases.** Allocution is an unsworn statement from a convicted defendant to the sentencing judge in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence.

15. **Sentences: Parties.** The right to allocution is personal to the defendant.

16. **Sentences: Evidence.** At a sentencing hearing, evidence may be presented as to any matter that the court deems relevant to the sentence.

17. ____: ____. A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed.

18. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education and experience, social and cultural background, past criminal record, and motivation for the offense, as well as the nature of the offense and the violence involved in the commission of the crime.

19. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court

must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

20. **New Trial.** A new trial can be granted on grounds materially affecting the substantial rights of the defendant.

21. **Motions for New Trial: Appeal and Error.** A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of discretion.

22. **Effectiveness of Counsel.** In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that he or she was prejudiced by such deficiency.

23. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** Ineffective assistance of counsel claims are generally addressed through a postconviction action. This is frequently because the record is insufficient to review the issue on direct appeal.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed in part, and in part reversed and remanded for a new trial.

Joe Nigro, Lancaster County Public Defender, and Yohance Christie for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

Moore, Chief Judge, and Irwin and Inbody, Judges.

Irwin, Judge.

## I. INTRODUCTION

Clinton Brooks appeals his convictions and sentences for theft by deception and the unauthorized practice of law. On appeal, Brooks argues that the district court erred in failing to allow testimony regarding a witness' reputation for untruthfulness, that the district court erred when it did not allow the testimony of four character witnesses on Brooks' behalf, that there was insufficient evidence to sustain his conviction for the unauthorized practice of law, that the district court provided erroneous instructions to the jury on the unauthorized

practice of law, that there was insufficient evidence to sustain his conviction for theft by deception, that the district court violated Brooks' right to allocution, that the district court considered improper evidence at the sentencing hearing, that Brooks received excessive sentences, that the district court erred in not granting Brooks' motion for a new trial, and that Brooks' trial counsel was ineffective.

Upon our review, we find that the district court erred in providing incorrect instructions to the jury with respect to the statute of limitations for the unauthorized practice of law. We reverse, and remand for a new trial on the unauthorized practice of law conviction. We find no merit to Brooks' other assertions on appeal. Accordingly, we affirm Brooks' conviction and sentence for theft by deception.

## II. BACKGROUND

On September 26, 2013, Brooks was charged by information with theft by deception involving $500 to $1,500. On December 11, the State amended the information to include a second charge of the unauthorized practice of law.

The events giving rise to this case began in the fall of 2011 in Lincoln, Nebraska, when Joshua Jordan Fitzgerald began contemplating dissolving his marriage. At the time, Joshua was 19 years old and had an infant son with his wife. Joshua and his mother, Sharon Fitzgerald, began looking for an attorney to help Joshua obtain a divorce and gain custody of his son. Despite meeting with two or three attorneys for consultations, Joshua and Sharon did not retain an attorney because they could not afford the fees.

While Joshua and Sharon were looking for an attorney, Sharon became aware that Brooks offered assistance to people with their legal problems. Sharon knew Brooks because he often came to her place of employment, George's Auto Sales, a car dealership and garage. Brooks was not and had never been an attorney licensed by the State of Nebraska. Brooks operated a business named "P.U.R.G.E., INC, People Utilizing Resources Gaining Education" (P.U.R.G.E.). P.U.R.G.E.

purported to help low-income individuals proceed pro se through the legal system by providing research assistance and guidance.

According to Sharon, Brooks offered to help Joshua with his divorce. Joshua and Sharon knew Brooks was not an attorney, but they hired Brooks because he offered to handle the paperwork for them for $1,500. On December 8, 2011, Sharon paid Brooks $750. Between December 2011 and April 2012, Joshua paid Brooks an additional $750 in $100 installments every 2 weeks.

On December 15, 2011, a complaint for dissolution of marriage listing Joshua as the plaintiff was filed in the district court for Lancaster County. A motion for ex parte order for temporary custody and a motion for leave to proceed in forma pauperis were also filed on Joshua's behalf. Joshua and Sharon, as well as Brooks, dispute whether Brooks drafted and filed these pleadings or whether Joshua and Sharon did.

On January 6, 2012, Joshua, Sharon, Joshua's father, and Brooks went to the Lancaster County District Court for a hearing. Brooks sat in the back of the courtroom. The hearing did not take place, because Joshua's wife had continued the proceedings. It later became apparent that Joshua's wife had filed for dissolution of marriage before Joshua had and that the January 6 hearing was for the case involving the wife's complaint for dissolution of marriage, not Joshua's. The wife's attorney had continued the hearing because Joshua had not yet been served. Although it is not entirely clear from the record, it appears that Joshua's complaint for dissolution of marriage was eventually returned to him due to the fact that Joshua's wife had already filed a complaint.

On January 13, 2012, there was another hearing in the dissolution of marriage case filed by Joshua's wife. At this hearing, Joshua and his wife presented evidence on temporary custody. The judge took the matter under advisement. On February 13, the court issued a written order granting temporary custody to Joshua's wife.

On March 5, 2012, a notice of appeal from the temporary custody ruling was filed on Joshua's behalf. The notice of appeal was accompanied by a motion to proceed on appeal in forma pauperis. On March 8, a motion to reconsider the temporary custody ruling was filed in the district court. Joshua and Sharon, as well as Brooks, dispute whether Brooks drafted and filed the appeal and motion to reconsider or whether Joshua and Sharon did. On April 13, the district court denied the motion for reconsideration, indicating it no longer retained jurisdiction over the case because Joshua had filed an appeal. Around June 4, Joshua received a letter dismissing the appeal. Joshua eventually hired an attorney in September 2012.

The attorney Joshua retained learned about Brooks' actions in the case, and the attorney's law firm notified the Nebraska State Bar Association, which referred the case involving Brooks to the Lancaster County Attorney. Brooks was consequently charged with theft by deception and the unauthorized practice of law.

A trial on the theft by deception and the unauthorized practice of law charges against Brooks was held from October 14 to 17, 2014. At the trial, Joshua testified that Sharon had first arranged for Joshua to meet with Brooks in early December 2011. At their first meeting, Brooks said he could "do the paperwork" for Joshua's divorce and custody case. Joshua testified that Brooks drafted and gave Joshua the completed complaint for dissolution of marriage and motion for ex parte order for temporary custody. According to Joshua, he signed the pleadings and returned them to Brooks. Joshua also testified that Brooks prepared the notice of appeal and the motion to reconsider. Joshua testified that he never personally filed any pleadings with the district court.

According to Joshua, after he received notice that the appeal had been dismissed, he called Brooks to make an appointment. Joshua testified that he called Brooks in "mid June to late June" and met with Brooks thereafter. At this meeting, Joshua and Brooks discussed "continuing the case." Brooks

advised Joshua to read some books "so [he] could better represent [him]self." Joshua testified that he had given up hope on Brooks, but that during the meeting, Brooks indicated he would continue to work on the case. Joshua testified that "the basic plan was just to do appeals."

Sharon also testified at the trial. Sharon testified that when she paid Brooks the $750 on December 8, 2011, she relied on his statement that he was a paralegal and that he would "handle all of the paperwork." Sharon testified she did not draft the complaint for dissolution of marriage, the motion for ex parte order for temporary custody, the motion for leave to proceed in forma pauperis, or the notice of appeal. Sharon also testified that she never filed any pleadings with the clerk of the court.

Sharon testified that after Joshua's appeal was dismissed, she also contacted and met with Brooks, separately from Joshua. According to Sharon, she first spoke with Brooks by telephone sometime after July 15, 2012. During this telephone conversation, Sharon expressed her frustration with Brooks and with how the case had proceeded. Sharon testified that during the telephone conversation, Brooks said "[they] would continue and get more paperwork filed."

Sharon testified she also met with Brooks in person after their telephone conversation. During the meeting, Sharon and Brooks discussed "[t]he paperwork that needed to be continued" and "which document [Brooks] wanted to file next." Sharon testified that she did not know what Brooks wanted to file, but stated, "I just know that there [were] more papers to file."

Brooks testified in his own defense. According to Brooks, he never claimed to be an attorney or a paralegal in his interactions with Joshua and Sharon. Brooks testified that he told Joshua and Sharon he could not represent them in court or file documents for them. Brooks' testimony was that he offered to help "navigate [Joshua and Sharon] through the judicial system." Brooks testified that he gave Joshua and Sharon advice

on styling the pleadings, but that he never drafted or filed any of the pleadings himself. According to Brooks, he advised Joshua and Sharon not to appeal the temporary custody ruling because it was not a final order. Brooks testified that he did not draft the motion to reconsider, but that he did review it and advised Sharon to make some changes to the motion before filing it.

After the trial, the jury found Brooks guilty of theft by deception and the unauthorized practice of law. The court sentenced Brooks to 15 to 35 months' imprisonment on the theft by deception conviction and 3 to 3 months' imprisonment on the unauthorized practice of law conviction, to be served consecutively. Brooks appeals from his convictions and sentences. Additional facts will be discussed, as necessary, in the analysis section of this opinion.

## III. ASSIGNMENTS OF ERROR

On appeal, Brooks assigns numerous errors. Restated and renumbered, those assigned errors are that (1) the district court erred in failing to allow testimony regarding Sharon's reputation for untruthfulness; (2) the district court erred when it did not allow four witnesses to testify about their prior positive interactions with Brooks nor to testify that Brooks never told them he was a paralegal; (3) there was insufficient evidence to sustain Brooks' conviction for the unauthorized practice of law because the evidence the State presented to support the conviction fell outside the statute of limitations; (4) the district court erred when it provided a jury instruction that allowed the jury to consider evidence outside the statute of limitations on the unauthorized practice of law charge; (5) there was insufficient evidence to sustain Brooks' conviction for theft by deception; (6) the district court violated Brooks' right to allocution when it refused to allow Brooks' wife to speak at the sentencing hearing; (7) the district court abused its discretion because when sentencing Brooks, it considered three letters from attorneys regarding Brooks' actions; (8) the sentences Brooks received were excessive; (9) the district court erred in

not granting Brooks' motion for new trial; and (10) Brooks' trial counsel was ineffective.

## IV. ANALYSIS

### 1. Testimony Regarding Sharon's Reputation for Untruthfulness

Brooks argues the district court erred when it excluded the testimony of one of Brooks' witnesses, Christine Johnson, as to Sharon's reputation for untruthfulness. Brooks argues that Johnson's testimony was admissible under Neb. Evid. R. 608, Neb. Rev. Stat. § 27-608 (Reissue 2008). Brooks failed to lay the proper foundation for the admission of Johnson's testimony regarding Sharon's untruthfulness. We find this assertion to be without merit.

[1-3] An appellate court reviews the trial court's conclusions with regard to evidentiary foundation for an abuse of discretion. *State v. Richardson*, 285 Neb. 847, 830 N.W.2d 183 (2013). Rule 608 allows the credibility of a witness to be attacked by evidence in the form of reputation or opinion, but such evidence may refer only to the witness' character for truthfulness or untruthfulness. *State v. Eldred*, 5 Neb. App. 424, 559 N.W.2d 519 (1997). The reputation of a witness for truthfulness or untruthfulness must be proved by a witness qualified by an opportunity to obtain knowledge of it. *Id*. Phrased another way, testimony regarding a witness' reputation for truthfulness or untruthfulness is admissible only after proper foundation has been laid. See *id.*

At the trial, Brooks called Johnson to the stand. Johnson testified that she worked at George's Auto Sales with Sharon and had known Sharon since 2011. According to Johnson, she had contact with Sharon "[o]n the days that [Sharon] would work." Johnson also testified that she had come into contact with other people who worked with Sharon. Brooks' attorney then asked, "As a result of your working with [Sharon], do you have an opinion as to her reputation for truthfulness and veracity in the work community?" Johnson indicated she did have an opinion as to Sharon's reputation for truthfulness. Brooks' attorney

asked whether Johnson's opinion of Sharon's reputation was "good or bad," and the State objected on relevance grounds. The court sustained the objection "on foundation."

After the court sustained the objection, there was a sidebar with both Brooks' attorney and the prosecutor. The court elaborated that foundation was lacking because Johnson "ha[d] not testified as to [Sharon's] reputation in the community." The court stated, "Now, maybe she has lied to this witness on an occasion, again, I'm not sure that that's relevant. But [Johnson] certainly has not laid the foundation to show that Sharon . . . has a character of not being honest."

After the sidebar, Brooks' attorney had the following exchange with Johnson:

> [Brooks' attorney:] As a result of working in the same community as [Sharon], have you had an opportunity to come to an understanding after interacting with other individuals in the working area as to what the reputation of Sharon . . . is for truth and veracity in that community? Yes or no.
>
> [Johnson:] So are you asking me do I have an opinion about her truth and veracity or what is my opinion?
>
> Q. Do you have an opinion as to what her reputation is in the community.
>
> A. Yes. I do, yes, sir.
>
> Q. For truth and veracity?
>
> A. Yes, sir, I do.
>
> Q. And is that good or bad?
>
> [The State]: I'm going to object —
>
> [Johnson]: Bad.

The court sustained the State's objection and ordered the jury to disregard whatever part of Johnson's answer it heard.

Following the second sustained objection to Johnson's testimony, Brooks' attorney questioned Johnson as follows:

> Q. And did you become aware of [Sharon's] reputation in the work community by interaction with other members of the work community at George's Auto [Sales]?

A. Yes. Well, I mean, and myself, too. I'm included, correct?

Q. Right.

And you did that by listening to other co-workers in that community and speaking to other co-workers in that community?

A. Yes, that and my own interactions.

Q. Okay. And is that what you based your opinion on? It is the fact that you've talked to other people and heard other people —

A. Some of it, yes.

Q. Okay.

A. And some of my own interactions.

Q. Okay. And you based your opinion that you expressed on those factors as well; is that correct?

A. Yes.

. . . .

Q. . . . Based upon factors and things that we discussed, is her reputation for truth and veracity in your community good or bad?

After this exchange, the State again objected, on foundation and relevance grounds. The court sustained the objection. Johnson was excused as a witness.

As a preliminary matter, we note that Brooks causes confusion by assigning as error the district court's exclusion of Johnson's "reputation *or opinion* evidence as to [Sharon's] untruthfulness." Brief for appellant at 4 (emphasis supplied). We conclude and the record reflects, however, that Brooks' trial attorney was attempting to elicit only reputation testimony, not opinion testimony, from Johnson. It is true that Brooks' attorney used the word "opinion" when he asked Johnson for her "opinion as to [Sharon's] reputation for truthfulness and veracity." However, when Johnson asked, "So are you asking me do I have an opinion about her truth and veracity or what is my opinion," Brooks' attorney clarified the question to be, "Do you have an opinion *as to what her reputation* is in the community[?]" (Emphasis supplied.) Furthermore,

the third and final time Brooks' attorney attempted to elicit Johnson's testimony, he phrased the question solely in terms of reputation: "Based upon factors and things that we discussed, is her reputation for truth and veracity in your community good or bad?" It is therefore apparent that despite Brooks' attorney's phrasing the question in terms of Johnson's "opinion," he was attempting to elicit only testimony regarding Sharon's reputation.

The parties do not cite, and we are unable to locate, a case from the Nebraska appellate courts detailing the foundational requirements for the admission of testimony regarding a witness' reputation for untruthfulness. Cases from other jurisdictions, however, have addressed when foundation is adequate to admit reputation testimony. For example, the Supreme Judicial Court of Maine ruled on the admissibility of reputation testimony in *State v. Tucker*, 968 A.2d 543 (Me. 2009). The pertinent Maine rule of evidence is worded similarly to Nebraska's rule 608. Compare Me. R. Evid. 608 with Neb. Evid. R. 608.

In *Tucker*, the defendant was charged with sexual assault. At trial, the defendant attempted to call a witness to testify about the victim's reputation for untruthfulness. *Id.* The Supreme Judicial Court upheld the trial court's exclusion of the reputation testimony due to lack of foundation. *Id.* The court stated:

> To be admissible, reputation evidence "must embody the collective judgment of the community and must be derived from a group whose size constitutes an indicium of inherent reliability." . . . "The community in which the impeached party has the reputation for untruthfulness must be sufficiently large; if the group is too insular, its opinion of the witness'[s] reputation for truthfulness may not be reliable because it may have been formed with the same set of biases."

*Id.* at 547 (citation omitted) (alteration in original). The witness indicated that the victim's reputation for being untruthful came from a group of eight teenagers "who socialized together

and generally had a narrow set of experiences with the victim." *Id.* at 548. The appellate court concluded that the trial court had properly excluded the reputation testimony because there was insufficient foundation to show that the witness based the reputation on a sufficiently large and diverse community. *Id.*

In the case at hand, Brooks similarly failed to show that Johnson's testimony regarding Sharon's reputation for untruthfulness was based on a sufficiently large and diverse community. Johnson testified that she had spoken with Sharon's coworkers at George's Auto Sales, but there was no evidence regarding how many employees worked at George's Auto Sales. Additionally, there was no foundation to demonstrate that the employees of George's Auto Sales formed a diverse group and that Johnson's opinion regarding Sharon's alleged reputation for untruthfulness was based on a broad set of experiences with this community. Like the foundation on an insular group of eight teenagers in *Tucker*, there was insufficient foundation here to demonstrate that Johnson's testimony regarding Sharon's reputation for untruthfulness was based on a sufficiently large and diverse community. See *id*. The trial court did not abuse its discretion when it excluded Johnson's testimony on the basis of insufficient foundation.

### 2. Brooks' Character Witnesses

Brooks asserts that the trial court erred when it excluded the testimony of four of Brooks' witnesses. The testimony of these witnesses pertained to positive interactions the witnesses had previously had with Brooks and the fact Brooks had never told any of the witnesses that he was a paralegal. Brooks argues the witnesses' testimony should have been admissible as an exception to hearsay for a declarant's state of mind, or as relevant character evidence of a pertinent trait—honesty. However, the offers of proof demonstrate that no hearsay was involved in the proposed testimony and that the witnesses would not have testified regarding Brooks' character trait of honesty. We find Brooks' assignment of error in this respect to be without merit.

[4,5] Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006). A trial court's decision regarding relevancy determinations will not be reversed absent an abuse of discretion. *State v. Sanders*, 269 Neb. 895, 697 N.W.2d 657 (2005).

[6] Neb. Evid. R. 404(1)(a), Neb. Rev. Stat. § 27-404(1)(a) (Cum. Supp. 2014), allows a criminal defendant to offer "[e]vidence of a pertinent trait of his or her character." In a criminal action, pertinent traits are those involved in the crime on trial, such as honesty in a theft case. *State v. Vogel*, 247 Neb. 209, 526 N.W.2d 80 (1995).

Before trial, the State filed a motion in limine to exclude the testimony of four witnesses that Brooks intended to call. The State asked the court to prevent these witnesses from testifying about their prior interactions with Brooks and from testifying that Brooks never called himself a paralegal. The State argued that it was improper impeachment of the State's witnesses, that the evidence was irrelevant, and that the testimony constituted inadmissible hearsay.

In response to the State's motion in limine, Brooks argued that the evidence was relevant because Brooks had helped the four witnesses on legal matters in the past, just as he claimed to have helped Joshua and Sharon. Brooks also argued the testimony would be admissible under Neb. Evid. R. 803(2), Neb. Rev. Stat. § 27-803(2) (Cum. Supp. 2014), the hearsay exception for a declarant's then-existing state of mind.

The trial court sustained the State's motion in limine. The court stated that the witnesses' testimony would not be relevant, because it did not relate to the incident between Joshua and Sharon and Brooks. As the trial court phrased it, "[T]he fact that somebody walked into a bank and talked to tellers 100 times and then on the 101st time went in and said, stick 'em up, I don't think those 100 transactions that the guy walked into the bank . . . and didn't say anything [are] relevant." The

court went on to state that even if the evidence were relevant, the court believed its probative value would be outweighed by its prejudicial effect.

In addition to ruling that the witnesses' testimony was not relevant, the court also stated that "to the extent this is character evidence," Neb. Evid. R. 405, Neb. Rev. Stat. § 27-405 (Reissue 2008), would prevent the witnesses from testifying to specific instances of Brooks' conduct, such as their prior interactions with him. The court explained that under rule 405, inquiry into specific instances of conduct is permissible only on cross-examination. Lastly, the court declined to address whether the testimony would be hearsay and whether it would fall under an exception to the hearsay rule.

At trial, Brooks did not call the four witnesses to testify. Instead, Brooks made offers of proof as to what the witnesses' testimony would have been in order to preserve the issue for appeal.

The first offer of proof demonstrated the first witness would have testified that he had known Brooks for 20 years and that Brooks had never said he was a paralegal. The witness would have testified that he was familiar with Brooks' company, P.U.R.G.E., and that his understanding was that Brooks helped his clients with the procedure of the legal system.

The second witness would have testified that she was the secretary and treasurer of P.U.R.G.E. She also would have testified that Brooks helped a friend of hers regain custody of her daughter. Lastly, the offer of proof demonstrated that the witness would have testified that Brooks "doesn't do the paralegal work, he just does research."

Third, Brooks offered the testimony of a witness who, according to the offer of proof, would have testified that he worked in the same building out of which Brooks operated P.U.R.G.E. Brooks' offer of proof demonstrated this third witness would have testified that Brooks helped him with a few tickets and an assault case and that Brooks never said he was an attorney or paralegal.

The fourth and last witness would have testified that Brooks had helped her with several legal matters. According to the offer of proof, Brooks never filed any documents on her behalf, but helped her research how to navigate the legal system herself. Lastly, she would have testified that she never heard Brooks refer to himself as a paralegal.

As in the motion in limine, the State objected to the testimony of the witnesses as irrelevant. The court sustained the State's objections and excluded the testimony of all four witnesses.

First, we note that the proposed testimony of Brooks' four witnesses did not involve hearsay. The offers of proof demonstrate the witnesses would have testified to something Brooks did *not* say: that he was a paralegal. Because no hearsay is involved, the state of mind exception found in rule 803(2) is inapplicable.

Next, we address Brooks' contention on appeal that the four witnesses identified in Brooks' offers of proof should have been permitted to testify under rule 404(1)(a) as providing evidence of a character trait—honesty—pertinent to the crimes with which he was charged. We agree that honesty would likely be a character trait pertinent to a crime involving fraud, such as theft by deception. See *State v. Vogel*, 247 Neb. 209, 526 N.W.2d 80 (1995).

However, at the hearing on the State's motion in limine and during his offers of proof at trial, Brooks did not reference rule 404(1)(a) as a basis for admitting the testimony in question. Even if Brooks had alerted the court that he was attempting to admit evidence of a pertinent character trait under rule 404(1)(a), Brooks' offers of proof reveal that none of these witnesses would have testified regarding Brooks' honesty. The witnesses' testimony pertained to Brooks' business, his prior interactions with clients, and the fact he never said he was a paralegal, not Brooks' character of truthfulness or honesty. As such, the testimony in question was not admissible as evidence of a pertinent character trait under rule 404(1)(a).

[7] We agree with the trial court that the four witnesses' proposed testimony was not relevant. It is well accepted that evidence of a defendant's prior bad acts is not admissible to prove that the defendant acted in conformity therewith on the occasion in question. *State v. Myers*, 15 Neb. App. 308, 726 N.W.2d 198 (2006). See, also, rule 404(2). Courts applying character evidence rules similar to those in Nebraska have also stated that evidence of prior *good* acts is inadmissible to prove that a defendant acted in conformity therewith on a given occasion. See, e.g., *United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985) ("[e]vidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable"); *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983) ("'[e]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant'"). Therefore, evidence that Brooks had favorable prior business relationships with other people is not relevant to his interactions with Joshua and Sharon in the present case. The trial court did not abuse its discretion when it excluded the testimony of Brooks' four character witnesses.

## 3. ERRONEOUS JURY INSTRUCTIONS

Brooks contends that the district court erred when it instructed the jury to consider periods of time that occurred outside the statute of limitations in determining whether or not Brooks was guilty of the unauthorized practice of law. Brooks argues the trial court also erred in refusing to give his proposed instruction, which he claims properly stated the statute of limitations. At the trial, Brooks did not object to the portion of the jury instructions providing the improper time period. Furthermore, Brooks' proposed jury instruction did not correctly state the statute of limitations period. Nevertheless, we conclude the trial court committed plain error by giving an incorrect jury instruction. We reverse, and remand for a new trial on the unauthorized practice of law conviction.

[8] Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice. *State v. Abdulkadir*, 286 Neb. 417, 837 N.W.2d 510 (2013). Nonetheless, whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. *State v. Weaver*, 267 Neb. 826, 677 N.W.2d 502 (2004). Because of this duty, the trial court, on its own motion, must correctly instruct on the law. *Id.*

The unauthorized practice of law is a Class III misdemeanor. Neb. Rev. Stat. § 7-101 (Reissue 2012). The statute of limitations for a misdemeanor requires that a person be charged within 1 year 6 months after committing the offense. *Id.*; Neb. Rev. Stat. § 29-110(2) (Cum. Supp. 2014).

In the present case, the State filed its amended information on December 11, 2013, alleging that Brooks committed the unauthorized practice of law. Therefore, the conduct constituting the unauthorized practice of law must have occurred on or after June 11, 2012, in order for the filing of the amended information to be considered timely. Brooks' conduct occurring before June 11 could not have been used to support Brooks' conviction for the unauthorized practice of law, because the statute of limitations had already run for that time period.

During the trial, Brooks and the State submitted proposed jury instructions. With respect to the unauthorized practice of law count, Brooks' proposed instruction listed the elements of the crime, including the following statement regarding the applicable time period:

> The material elements which the State must prove by evidence beyond a reasonable doubt to convict . . . Brooks of the Unauthorized Practice of Law are:
>
> . . . .
>
> 3. That the actions of . . . Brooks took place on, about or between December 1, 2011, and July 31, 2012, in Lancaster County, Ne.

Brooks' proposed instruction also contained the following:

As to Count [II], if you find beyond a reasonable doubt that . . . Brooks is guilty of Count II, you must also make a finding of the last day [t]hat . . . Brooks['] conduct ended as charged in this count:

We find beyond a reasonable doubt that . . . Brooks['] conduct ended in Count II on or about _____ ___, 201__.

The trial court's jury instructions listed the elements of the crimes in instruction No. 4. Instruction No. 4B listed the elements of the unauthorized practice of law. Instruction No. 4B stated, in part:

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict . . . Brooks of the Unauthorized Practice of Law are:

. . . .

3. That the actions of . . . Brooks took place on or about or between December 1, 2011, and July 31, 2012, in Lancaster County, Nebraska.

The court's final jury instructions did not contain Brooks' proposed instruction requiring the jury to make a finding regarding the day on which Brooks' conduct ended.

After presenting the jury instructions to the parties, the court held a conference. Brooks' attorney objected to the court's instruction listing the elements of the unauthorized practice of law because it did not require the jury to specify the timeframe of the conduct. The court overruled Brooks' objection. Brooks did not object to the portion of jury instruction No. 4B which stated that an element of the unauthorized practice of law was that "the actions of . . . Brooks took place on or about or between December 1, 2011, and July 31, 2012."

The court's jury instructions incorrectly stated that the jury could convict Brooks of the unauthorized practice of law based on conduct that occurred prior to June 11, 2012. However, Brooks did not preserve error regarding the fact that instruction No. 4B included a period of time beyond the statute of limitations. Brooks did not object to the instruction after it

had been submitted for his review. See *State v. Abdulkadir*, 286 Neb. 417, 837 N.W.2d 510 (2013). Additionally, Brooks' proposed instruction included the same timespan (December 1, 2011, to July 31, 2012) as the court's final instructions. Brooks' contention that the trial court erred in not giving his proposed instruction is therefore also without merit.

Nevertheless, we find the trial court committed plain error by erroneously instructing the jury that it could base its guilty verdict on conduct that occurred before June 11, 2012. Brooks' conduct prior to June 11 could not have supported his conviction for the unauthorized practice of law, because the statute of limitations would have run with respect to that conduct by the time the State filed its amended information. See *State v. Loyd*, 275 Neb. 205, 745 N.W.2d 338 (2008). Although Brooks did not specifically object to jury instruction No. 4B or request an instruction which listed the proper time period, the court still had a duty to correctly instruct the jury on the applicable law, including the statute of limitations. See *State v. Weaver*, 267 Neb. 826, 677 N.W.2d 502 (2004). We conclude the trial court committed plain error when it instructed the jury that it could rely on Brooks' conduct prior to June 11, 2012, in finding him guilty of the unauthorized practice of law. We reverse Brooks' conviction for the unauthorized practice of law. We next must address whether Brooks can be retried for the unauthorized practice of law.

### 4. Retrial on Unauthorized Practice of Law

Brooks asserts there was insufficient evidence to support his conviction for the unauthorized practice of law. We address Brooks' sufficiency of the evidence claim in order to determine whether the Double Jeopardy Clause bars a retrial. We conclude Brooks can be retried for the unauthorized practice of law.

[9-11] Upon finding error in a criminal trial, the reviewing court must determine whether all evidence admitted by the trial court was sufficient to sustain the conviction before

remanding for a new trial. See *State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007). See, also, *Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). The Double Jeopardy Clause does not forbid a retrial so long as the sum of the evidence admitted by a trial court would have been sufficient to sustain a guilty verdict. *McCulloch, supra*. When considering the sufficiency of the evidence in determining whether to remand for a new trial or to dismiss, an appellate court must consider all the evidence admitted by the trial court irrespective of the correctness of that admission. *Id.*

Section 7-101 prohibits the unauthorized practice of law:

> [N]o person shall practice as an attorney or counselor at law, or commence, conduct or defend any action or proceeding to which he is not a party, either by using or subscribing his own name, or the name of any other person, or by drawing pleadings or other papers to be signed and filed by a party, in any court of record of this state, unless he has been previously admitted to the bar by order of the Supreme Court of this state.

The Nebraska Supreme Court has elaborated that the practice of law includes the direct examination and cross-examination of witnesses, argument to the court, the trial of cases in court, and the giving of legal advice to persons regarding their rights. *In re Estate of Cooper*, 275 Neb. 297, 746 N.W.2d 653 (2008); *State, ex rel. Hunter, v. Kirk*, 133 Neb. 625, 276 N.W. 380 (1937).

There was evidence presented at the trial that Brooks drafted and filed numerous pleadings in Joshua's dissolution and custody case. See § 7-101. The evidence also supported a finding that Brooks gave Joshua legal advice concerning his rights, including what documents to file, how to proceed with the case after Joshua's ex-wife was granted temporary custody, and how to move forward with the case after Joshua's appeal was denied. See *Kirk, supra*.

Brooks correctly observes that all of the pleadings were filed in Joshua's dissolution and custody case prior to June 11, 2012.

Brooks asserts that the pleadings cannot support his conviction because they were drafted and filed outside the statute of limitations period. However, in determining whether sufficient evidence was adduced at trial in order to permit Brooks to be retried, we consider all the evidence the court admitted, including erroneously admitted evidence. See *McCulloch, supra*. We conclude that there was sufficient evidence adduced at trial to sustain Brooks' conviction for the unauthorized practice of law. Thus, Brooks is not entitled to dismissal of the charges against him and can be retried for the unauthorized practice of law. However, we address the admissibility of evidence from outside the statute of limitations because we believe it is an issue likely to recur on retrial.

[12] An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013). In arguing that the evidence was insufficient to sustain his conviction for the unauthorized practice of law, Brooks appears to contend that the jury should not have been permitted to hear any evidence of Brooks' conduct that occurred outside the statute of limitations. We note that, given our prior discussion, evidence from outside the limitations period cannot be used to convict Brooks for the unauthorized practice of law on retrial. However, evidence of Brooks' conduct from outside the limitations period is admissible to provide context to evidence from within the limitations period.

[13] Prior conduct that is "inextricably intertwined with the charged crime" is admissible to "complete[] the story or provide[] a total picture of the charged crime." *State v. Powers*, 10 Neb. App. 256, 262, 634 N.W.2d 1, 7, 8 (2001), *disapproved on other grounds, State v. Smith*, 267 Neb. 917, 678 N.W.2d 733 (2004). For example, in *Powers*, the defendant was charged with terroristic threats for sending a letter to the Attorney General. In the letter, the defendant stated, "'I'm writing to you in regards to all of the threatening letter's [sic]

that I've written to you in the past'" and "'I'll . . . do all that I told you I would do. . . .'" *Id.* at 257, 634 N.W.2d at 4 (alteration in original). The Court of Appeals held that the trial court had properly admitted the defendant's past threatening letters into evidence because they were inextricably intertwined with the charge of terroristic threats and were necessary to show the details and context of his threats in the most current letter. *Powers, supra.*

In the case at hand, Brooks had conversations with Joshua and Sharon after June 11, 2012, about "continuing the case" and "papers to file." Evidence of Brooks' acts prior to June 11 is admissible to give context to these statements. The evidence shows that prior to June 11, Brooks had advised Joshua and Sharon on which documents to file and had drafted and filed pleadings on their behalf. This background is inextricably intertwined with Brooks' representations after June 11 that he would continue working on the case and file additional pleadings. On retrial, the court may properly admit evidence from outside the statute of limitations to provide necessary context to Brooks' alleged unauthorized practice of law occurring within the limitations period.

We reverse Brooks' conviction for the unauthorized practice of law and remand that matter for a new trial.

## 5. INSUFFICIENT EVIDENCE OF THEFT BY DECEPTION

Brooks asserts there was insufficient evidence to sustain his conviction for theft by deception. According to Brooks, he lacked the intent required for theft by deception because he did not believe he was violating any laws by helping Joshua on his court case. The evidence demonstrates that Brooks knew his actions were contrary to the statute banning nonattorneys from practicing law and that he intended to create the impression he could give Joshua legal advice and assistance in order to obtain money from Joshua and Sharon. As such, this assignment of error is without merit.

As stated above, an appellate court reviewing the sufficiency of the evidence asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015).

A person commits theft by deception if he or she obtains property by intentionally "creat[ing] or reinforc[ing] a false impression, including false impressions as to law, value, intention, or other state of mind." Neb. Rev. Stat. § 28-512(1) (Reissue 2008).

Brooks misstates this assignment of error in his brief. Specifically, Brooks' third and fifth assignments of error are identical. Both assignments of error state, "The evidence adduced at trial was insufficient to sustain a conviction for *the unauthorized practice of law*." (Emphasis supplied.) However, it appears to us after reading Brooks' argument section that Brooks intended to assign the sufficiency of the evidence to support his theft by deception conviction as his fifth assignment of error rather than repeating his third assignment of error.

The State's theory at trial was that Brooks intentionally created a false impression as to what the law allowed him to do as a nonattorney in order to induce Joshua and Sharon to pay him the $1,500. Brooks argues that he lacked the intent to create a false impression because he did not know what the law prohibited nonattorneys from doing and therefore lacked the intent to deceive Joshua and Sharon. The evidence presented at trial contradicts Brooks' assertion.

At trial, Brooks himself testified that he told Joshua and Sharon he could neither represent them in court nor file documents for them because he was a nonattorney. Yet Joshua and Sharon both testified that Brooks said he would "handle all of the paperwork" for them. Joshua's and Sharon's testimony also supported a finding that Brooks drafted and filed the pleadings in Joshua's dissolution and custody case. This

testimony demonstrates that Brooks understood what was prohibited by the law, but that he nevertheless created the false impression that he could advise Joshua and draft and file pleadings in Joshua's case in order to obtain $1,500 from Joshua and Sharon.

This evidence, when viewed in a light most favorable to the State, provides a basis for a rational jury to find Brooks guilty of theft by deception. There is no merit to Brooks' assignment of error.

### 6. ALLOCUTION

Brooks argues the district court violated his right to allocution when it did not let his wife speak at the sentencing hearing. We disagree.

[14] Allocution is an unsworn statement from a convicted defendant to the sentencing judge in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence. *State v. Pereira*, 284 Neb. 982, 824 N.W.2d 706 (2013). The right to allocution is codified at Neb. Rev. Stat. § 29-2201 (Reissue 2008), which states, in relevant part, "Before the sentence is pronounced, the defendant must be . . . asked whether he has anything to say why judgment should not be passed against him."

A sentencing hearing was held on December 23, 2014. At the hearing, Brooks indicated his wife wanted to make a statement to the court. The court denied the request because Brooks had not previously submitted a written statement from his wife.

After Brooks' request for his wife to speak was denied, Brooks spoke at the sentencing hearing. His allocution lasts nearly nine pages in the bill of exceptions. After Brooks' allocution, he again asked the court to hear from his wife. The court stated it required statements from individuals speaking at sentencing to be presented in writing ahead of time. The court indicated it required prior written statements so that the State had an opportunity to review the statements. For these

reasons, the court again denied Brooks' request that his wife be allowed to speak.

The State argues Brooks did not preserve this issue for appeal because he did not object to the court's refusal to allow Brooks' wife to speak. The record of the sentencing hearing reveals that Brooks twice asked the court to allow his wife to speak. Although Brooks did not use the word "objection" during the second request, he did bring his disagreement with the initial ruling to the court's attention by repeating his request.

[15] However, even if we determine that Brooks preserved error on this issue, his assertion that the court violated his right to allocution is without merit. The right to allocution is personal to the defendant. The statute indicates that "*the defendant* must be . . . asked" whether he wishes to say anything. § 29-2201 (emphasis supplied). Similarly, the Supreme Court defines allocution as a "'statement *from a convicted defendant*.'" *Pereira*, 284 Neb. at 985, 824 N.W.2d at 709 (emphasis supplied). Brooks exercised his right to allocution and made a lengthy statement to the court. His right to allocution did not require the court to allow his wife to speak as well. Brooks' assignment of error in this regard is without merit.

### 7. Letters From Attorneys
#### at Sentencing

Brooks also alleges the district court abused its discretion at the sentencing hearing by considering letters from attorneys in the community that indicated Brooks had continued to engage in the unauthorized practice of law following his conviction. Brooks asserts that the letters lacked corroborating information and that the court stated that it believed the letters were only half true. This assignment of error is without merit.

[16,17] At a sentencing hearing, evidence may be presented as to any matter that the court deems relevant to the sentence. *State v. Griffin*, 270 Neb. 578, 705 N.W.2d 51 (2005). A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining

the kind and extent of the punishment to be imposed. *State v. Thomas*, 268 Neb. 570, 685 N.W.2d 69 (2004).

As part of the presentence report, the court received one e-mail and two letters from local attorneys. The e-mail was from a deputy county attorney to Brooks' presentence investigation officer. The e-mail indicated that Brooks came into a courtroom where the deputy county attorney was interviewing pro se defendants and said he was "present 'amicus curiae.'" The deputy county attorney did not personally see Brooks engaging in the unauthorized practice of law. The deputy county attorney stated, however, that she believed two other attorneys had witnessed Brooks giving legal advice to their clients.

The two letters accompanying the presentence report were from the attorneys mentioned in the deputy county attorney's e-mail. The attorneys represent individuals facing contempt of court charges due to nonpayment of child support. The first attorney indicated that one of the attorney's clients brought Brooks to a private meeting with the attorney. During the meeting, Brooks encouraged the client "to proceed to trial . . . and that, should he lose, he could merely appeal the decision." The attorney indicated that this was contrary to the advice he had given the client and that in the attorney's opinion, "Brooks was engaging in the unauthorized practice of law."

The second attorney's letter told a similar story. The second attorney had been in a courtroom where Brooks was also present. Brooks "was speaking loudly and answering questions from multiple persons," including advising people on the amount of child support a court could order someone to pay. The attorney opined that Brooks' recommendations were misleading and constituted the giving of legal advice.

In his allocution, Brooks admitted to being at the courthouse during one incident described in the letters. Brooks claimed, however, that he was there with his cousin. Brooks further asserted he did not give anyone legal advice, but merely advised his cousin to read the statute by saying, "[A]ll you have to do is go to [chapter] 42."

At the time of sentencing, the court made the following statement regarding the attorneys' letters:

> I can't ignore letters to me from attorneys that within months of a jury verdict say to me that you're up here giving people legal advice.
>
> And whether you dispute that or not, whether you think that they didn't — they misreported that, these are attorneys that have gone to some length to write and say, I believe an individual — this individual — was engaging in the unauthorized practice of law by advising my clients. . . .
>
> . . . .
>
> . . . I can't ignore those things even if they're only half true.

Brooks claims the trial court abused its discretion because "[t]hings that are half true should be ignored by the sentencing court." Brief for appellant at 41. However, the trial court's statement that it could not ignore the letters "even if they're only half true" does not appear to be an indication that the court believed the letters were partially untrue, but a turn of phrase. The court was apparently expressing its disapproval of Brooks' behavior by indicating that if even half of the misconduct alleged by the attorneys were true, it would still be so egregious as to warrant consideration by the court during sentencing. The court may also have been referencing the fact that, by Brooks' own admission, the letters were "half true" because Brooks admitted to being at the courthouse with his cousin and advising him to read "[chapter] 42." We cannot say that the district court abused its discretion by finding the attorneys' letters to be more credible than Brooks' version of events. It was not error for the court to consider the letters at the sentencing hearing.

## 8. EXCESSIVE SENTENCES

Brooks also asserts the district court imposed excessive sentences by not giving proper weight to evidence that Brooks

was trying to better himself and the fact that the offenses were nonviolent.

[18,19] When imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education and experience, social and cultural background, past criminal record, and motivation for the offense, as well as the nature of the offense and the violence involved in the commission of the crime. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

At the sentencing hearing, the court indicated it had considered all the statutory factors and reviewed the presentence report. The court also referenced the attorneys' letters demonstrating that Brooks continued to engage in the unauthorized practice of law. The court concluded that a jail sentence was appropriate:

> I think this is dangerous behavior. And the fact that you're willing to do this after being convicted by a jury of a felony just says to me that if I put you on probation, this isn't going [to] change. And I didn't hear one word from you today that suggested to me that this would change.
>
>  . . . [Q]uite frankly, I feel a period of incarceration is appropriate because anything less would depreciate the seriousness of what you've done and promote disrespect for the law.

The district court sentenced Brooks to imprisonment for 15 to 35 months on the theft by deception conviction and 3 to 3 months on the unauthorized practice of law conviction. The court ordered that the sentences be served consecutively.

Brooks' sentences were within the statutory limits. See, Neb. Rev. Stat. § 28-518(2) (Cum. Supp. 2014) (stating that theft by

deception is Class IV felony when it involves more than $500 and not over $1,500); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014) (providing sentencing range of 0 to 5 years' imprisonment for Class IV felony); § 7-101 (stating that unauthorized practice of law is Class III misdemeanor); Neb. Rev. Stat. § 28-106 (Cum. Supp. 2014) (providing sentencing range of 0 to 3 months' imprisonment for Class III misdemeanor). We therefore review Brooks' sentences only for an abuse of discretion by the district court. See *Casares, supra*.

Brooks argues the trial court did not properly consider that Brooks had taken steps to better himself, including going to school and having little contact with law enforcement in recent years. Brooks also argues the court should have considered the nonviolent nature of the crimes as a mitigating factor. However, the record reveals that the district court relied upon evidence that Brooks had not taken steps to better himself, but had instead continued to engage in the unauthorized practice of law, following his conviction. Furthermore, the court noted that Brooks' crimes were "dangerous behavior" because other people's legal interests were at stake, even if the crimes were not violent offenses. We cannot find an abuse of discretion in the sentences imposed in this case.

### 9. MOTION FOR NEW TRIAL

Brooks argues the trial court erred in failing to grant his motion for new trial. Brooks asserts he was entitled to a new trial because the district court erred when it excluded Johnson's testimony about Sharon's reputation for untruthfulness, when it excluded Brooks' four character witnesses, when it determined there was sufficient evidence to support the unauthorized practice of law conviction, and when it determined there was sufficient evidence to support Brooks' conviction for theft by deception. This assignment of error is meritless.

[20,21] A new trial can be granted on grounds materially affecting the substantial rights of the defendant. *State v. Dunster*, 270 Neb. 773, 707 N.W.2d 412 (2005). A motion for new trial is addressed to the discretion of the trial court,

whose decision will be upheld in the absence of an abuse of discretion. *State v. Harris*, 264 Neb. 856, 652 N.W.2d 585 (2002).

Brooks does not assert any new issues in this assignment of error, but, rather, argues that the trial court should have granted him a new trial based on other assigned errors already addressed. For the reasons discussed above, Brooks' assertions are without merit. The district court did not abuse its discretion in refusing to grant Brooks' motion for new trial.

## 10. Ineffective Assistance of Counsel

Brooks asserts that his trial counsel failed to provide effective assistance. He argues that his trial counsel was ineffective with regard to (1) failing to cite § 27-608 when the court asked for relevant authority supporting the admission of Johnson's testimony; (2) failing to lay proper foundation for Johnson's testimony; (3) failing to lay proper foundation for the admission of Brooks' four character witnesses; (4) failing to file a motion in limine or object at trial to prevent the introduction of evidence outside the statute of limitations on the unauthorized practice of law charge; (5) failing to impeach Sharon about inconsistent statements between her trial testimony and her interview with an investigator; (6) failing to object to jury instruction No. 4B, which permitted the jury to convict Brooks of the unauthorized practice of law based on evidence outside the statute of limitations; and (7) failing to move for the trial judge to recuse himself because he presided over another case in which Brooks was involved. We find that effectiveness of counsel in these regards cannot be addressed on direct appeal because the record is insufficient at this time.

[22,23] In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that he or she was prejudiced by such deficiency. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Ineffective assistance of counsel claims

are generally addressed through a postconviction action. *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013). This is frequently because the record is insufficient to review the issue on direct appeal. *Id.*

As an initial matter, we note that our earlier discussion of the trial court's erroneous inclusion of dates outside the statute of limitations in jury instruction No. 4B eliminates the need to address that allegation of ineffectiveness. With respect to the six remaining allegations of ineffective assistance of counsel, the record is insufficient for us to evaluate counsel's actions in each respect in which Brooks asserts the performance was deficient. Brooks' assertions require an evaluation of counsel's trial strategy, for which the record is insufficient. See *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014). Thus, we do not address the merits of this assignment of error.

## V. CONCLUSION

Upon our review, we find that the district court erred when it instructed the jury that it could convict Brooks of the unauthorized practice of law based on conduct occurring outside the statute of limitations. We reverse Brooks' conviction for the unauthorized practice of law and remand that matter for a new trial. We find no merit to Brooks' other assertions on appeal. Accordingly, we affirm Brooks' conviction and sentence for theft by deception.

Affirmed in part, and in part reversed
and remanded for a new trial.